## BRADLEY *v.* THE NASHVILLE INSURANCE COMPANY.

Where a vessel insured " at and from N. to H.., from thence to B. and back to N." is lost while in the port of H., the loss is covered by the policy. The insurance is the same as if the policy had been " at and from N. to B. with liberty to stop at the intermediate port H. The words "*thence*" and "*from*" when applied to intermediate ports have not the same exclusive sense as when used with regard to the commencement of a voyage; they are merely descriptive of the course of the voyage. Under policies "*from*" a port, instead of " *at and from*," the risk attaches only from the time of sailing; but though "*at*" is used when it is intended to include the insurance in port at the commencement of the voyage, it is not usual to insert it in relation to intermediate ports, to cover the risk while there.

Where an insurance company was bound in good faith to furnish a policy in the usual form and with the usual clauses, they will not be allowed to release themselves from any liability to the insured from their neglect to do so.

In the construction of policies of insurance the intent is to be regarded, rather than the grammatical construction.

A PPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Lockett* and *Goold*, for the plaintiff, cited 1 Duer on Ins. p. 160–1. *Palmer v. Warren Insurance Company*, 1 Story, 368. *Dow* v. *Hope Insurance Company*, 1 Hall S. C. R. 174. *Yeaton* v. *Fry*, 5 Cranch, 342. 1 Burr. 348. 10 John. 120. *Patrick* v. *Com. Ins. Co.* 11 Johns., 9. *Sea Ins. Co. v. Gavin*, 2 Dow and Clarke, 129. *Bell* v. *Marine Ins. Co.*, 5 Serg. & Rawle, 122. *Merchants' Ins. Co.* v. *Clapp*, 11 Pick. 64. 2 Duer on Ins. 706. *Palmer* v. *Flemming*, 9 Bing. 460. *Mount* v. *Larkin*, 8 Bing. 108. *Palmer* v. *Marshall*, 6 Ib. 79. *Oliver* v. *Maryland Ins. Co.* 7 Cranch, 490. 1 Phill. on Ins. p. 462.

*Bradford*, on the same side.

*Hunton*, for the appellants, as to the question of deviation cited, *Hammond* v. *Reid*, 4 R. & A. 72. *Williams* v. *Shee*, 3 Camp. 469. 1 Phillips on Ins. 233, 507, 532. 1 Marshall on In. 185–6. On a careful examination of the policy it will be found that none of the cases cited are in point, for the expressions and stipulations in this policy differ materially from the expressions in those policies describing the voyage, as well as the clause relating to the beginning, continuance and end of the risk. They differ in these important clauses: in some of the cases cited, the several parts are merely mentioned; in the others, the words " to" and "thence" are used in reference to the intermediate ports, but in no one of them is the word "from" used · in reference to the intermediate port. In this connexion, the word "from" is pregnant with meaning; it suspends or excludes the risk whilst in the port. The terms " at and from" are most significant terms, whether used with reference to the port of departure or an intermediate port. If it were the intention of the parties that the vessel should be insured at Havana, it ought to have been in some manner so expressly declared, or at least that significant preposition "from" ought not to have been inserted; " at and from thence" has a meaning and signification which differs from the word " thence." I have examined a great number of reported cases, and find that generally, though not always, the word " at" is inserted in reference to intermediate ports. It is too significant to be implied when it might so easily be expressed; and when it is inserted in reference to one of the ports and omitted in reference to the other, the inference is, that it was intentionally omitted.

The judgment of the court, which was pronounced on a re-hearing, was delivered by

EUSTIS, C. J.   This case was before us at the last June term, and we held that the underwriters were not responsible under the policy for the loss for which this action was instituted.   An application was made for a re-hearing, which was granted.   The case was not fully argued at the first hearing, and a more thorough examination of the subject during the interval has not enabled us to concur in the views we first expressed.

The suit is brought to recover $1,700, the amount of a policy of insurance on the schooner Planet, *at and from New Orleans to Havana, from thence to Burita and back to New Orleans*, as is described in the first part of the policy. The description of the voyage in the written application for insurance, and in another part of the policy, does not materially vary from the first description. There was judgment in the court below for the plaintiff, and the defendants have appealed.

The vessel having been lost after her safe arrival in the port of Havana, it is contended by the defendants that they are not liable for the loss, inasmuch as, while in that port, the vessel was not covered by the insurance, according to the terms of the policy.   Burita is a small village on the Rio Grande, below Matamoros.   The risks to which the vessels were subjected in port were not merely the ordinary risks in time of peace.   War at the time existed between the United States and Mexico, and the vessel was exposed to delay in the port of the Havana and to war risks at Burita, which was then occupied by a portion of our forces.   No authority having been referred to as to any particular meaning being given in insurance to the word *thence*, we took it, as in its ordinary sense, to mean from that place—from the Havana; and, under the construction attached to the words *at and from* in the law of insurance, we thought the loss of the vessel in port was not insured against by the description used in the policy.

It is laid down by writers on insurance that, under policies *from* a port, instead of *at* and *from*, the risk attaches at the time of the sailing of the vessel, that is, at the time of weighing anchor and breaking ground for the voyage with all the preparations completely made.   The word *from*, used alone, is held to exclude the risks while lying in port before sailing.   An examination of the cases from which this rule is deduced has satisfied us, that the use of the word *from* in this exclusive sense is confined to the commencement of the voyage insured, and that those cases, which depend upon the meaning of the words *at*, *at and from*, and *to*, relate to the beginning and end of risks, and are not applicable, in that exclusive sense, to ports at which the vessel may stop during a voyage described in the policy.   We find the word *thence* frequently used in reference to the intermediate ports of a voyage, and never recognized by courts as a term of exclusion, and we are satisfied that insurance to a port, thence to another, and thence to a third, is the same as from the first to the last with liberty to stop at the intermediate ports.   We have not met with any case in which, when applied to an intermediate port, the words *thence* or *from* have been held to have the same exclusive sense as when used with regard to the commencement of a voyage.

On an insurance at and from New Orleans to the Havana, thence to Burita, and back to New Orleans, the word thence is not a term of exclusion or of limitation of risks, but descriptive of the course of the voyage; and although

the word *at* is used to include the insurance in port at the commencement of the voyage, yet it is not usual to insert it in relation to intermediate ports of the same voyage, nor is it considered necessary in order to cover the risks while there; and such we now believe is the general understanding of merchants and underwriters.

The subject is not susceptible of much illustration by way of argument. It is supported by concurrent authority. The construction given by courts to policies which cover risks in port which are not included by express words, but implied by the description of the voyage, appears to us to be conclusive against the underwriters in this case. *Brown* v. *Vigne*, 12 East. 283. *Cockey* v. *Atkinson*, 2 Barnwell & A., 460. *Ellery* v. *N. E. Ins. Co.*, 8 Pickering, 14. *Bell* v. *Marine Ins. Co.*, 8 Sargeant & Rawle, 98. *Parsons* v. *Mass. Ins. Co.*, 6 Mass. 179. *De Longuemére* v. *N. Y. F. Ins. Co.*, 10 Johnson, 120. *Patrick* v. *Con. Ins. Co.*, 11 Johnson, 9.

It is important to add that the construction which we give to the description of the risk in this policy, is in conformity with the opinions of Judge Phillips of Massachusetts, and Mr. Duer of New York, the distinguished authors of the treatises referred to in argument.

But it is urged that the cases upon which this construction is founded, differ from the present, in this: that in all of them there was the clause declaring distinctly that the adventure should continue and endure till the arrival of the vessel at the last port. That such a clause is usual in all policies in the United States, we believe to be the fact; it certainly is in the New Orleans policies. It is not easy to perceive how the underwriters can be benefited by the absence of this clause, as restricting the insurance to risks at sea, when we consider the manner in which this insurance was effected.

On the application made by the plaintiff's agent for insurance on the hull of the schooner Planet from this to Havana, and from thence to Burita, and from thence back to New Orleans, for $1,700, we find the rate marked seven per cent. A separate policy for this insurance was required by the agent in his application. Can it be questioned that, according to the course of business, the company was bound in good faith to furnish the party a policy in the usual form and with the usual clauses? A large portion of insurance is transacted without the policy being looked at by the insured, and we think no court would hesitate to reform a policy under such circumstance, and give the insured the indemnity for which his premium has been paid. In the present case the defendants filled up a blank policy on merchandize, thus increasing the difficulties with which this most informal of legal instruments is attended. But there happens to be in this policy, immediately following the description of the voyage: "Beginning the adventure upon said goods and merchandize, from and immediately following the loading thereof on board the said vessel as aforesaid, and so shall *continue and endure* until the said goods and merchandize shall be safely landed as aforesaid." What, it may be asked, is to *continue and endure?* The adventure. And what is the adventure, but the risk?

If this clause mean any thing, it means that the risk shall continue without interruption till the end of the voyage. *Mutatis mutandis*, substituting the subject insured—the vessel—for that for which the form was printed, that the insurance was to continue up to the termination of the voyage seems to be beyond all question.

The intention of the parties, as collected from the terms employed in the con-

tract according to the usage of insurance, was, we think with the district judge <span style="float:right">BRADLEY</span>
who decided this cause, to insure the vessel back to New Orleans.  The voyage <span style="float:right">NASHVILLE IN-</span>
was entire, the risk was not interrupted or suspended by any stipulation to that <span style="float:right">SURANCE COM-</span>
effect, the premium was entire, and we think the insurance was uninterrupted <span style="float:right">PANY.</span>
and entire.  Policies of insurance are rarely subjected to any critical construc-
tion, and the intent is regarded rather than any grammatical accuracy in the
use of language.  *Palmer* v. *Warren Ins. Co.*, 1 Story's Rep. 365.  1 Duer
on Ins. 161.

Our attention has been called to the point raised in the defence, that the de-
lay of the Planet in the Havana amounted to a deviation from the voyage.  It
is in evidence that the schooner was detained for a few days for the purpose of
getting the news from Mexico by the steamer, and that on her arrival the
schooner was got ready to take in her cargo.  In the case of *Hagedorn* v. *The
St. Louis Perpetual Insurance Company*, 2 An. p. 1005, we considered this sub-
ject.  We thought that, under the evidence and the state of war which existed
between this country and Mexico, and considering the condition and situation of
Burita, which was then under the control of our army on the Rio Grande, the
delay was in the furtherance of the object of the voyage, and not such as to
terminate the insurance.

The delay, under these circumstances, we do not think constitutes a devia-
tion, according to the authorities cited by the counsel for the defendant.

<div style="text-align:right">*Judgment affirmed.*</div>