LECHE, J.
On the 30th day of August, 1918, J. Leer Lacombe,, who was then cashier of the First National Bank of Eunice, Eunice, La., took out two policies of life insurance in the New York Life Insurance Company, each for the sum of 810,000, designating -as his beneficiary “the First National Bank of Eunice, La., or its legal representatives.” On or about the 27th day of February, 1919, the First National Bank of Eunice surrendered its charter, liquidated its affairs, and went out of existence. About the same time the stockholders of the First National Bank organized another bank under the state laws of Louisiana, naming it the “American Bank & Trust Company,” and on March 20, 1919, the directors of the new bank by appropriate resolutions assumed all the liabilities and took over all the assets of the defunct First National Bank. It is not disputed that the purpose of the stockholders was to avoid some of the federal restrictions in the conduct of the affairs of national banks, and that the American Bank &. Trust Company succeeded the First National Bank and continued the same business. Lacombe was retained as cashier, and the two life insurance *63 policies remained in the vaults of the American Bank & Trust Company, the same vaults in which they had been kept by the first National Bank of Eunice, unchanged as to the designation of a beneficiary, although as far back as July 31, 1919, request had been made of the New York Life Insurance Agency in New Orleans for the necessary blanks to have the name of the beneficiary changed from the First National Bank to the American Bank & Trust company. The premiums on these policies had been paid by the First National Bank, and the American Bank, desiring to keep them up, continued to pay premiums until the death of Lacombe. Lacombe died suddenly on January 5, 1921, his succession was opened, and his widow, Mrs. Sallie Dorsett, was appointed administratrix.
The present suit was brought by the administratrix against the state bank examiner and the liquidating agent of the American Bank & Trust Company, which is in process of liquidation, for the purpose of having the two insurance policies declared as belonging to the succession and to recover possession of same.
The defense is substantially that the policies were taken out by the First National Bank of Eunice against loss of said cashier Lacombe’s services by death; that they were the property of said bank; that the American Bank & Trust Company acquired the same as part of the assets of the First National Bank, of which it is the successor, and by virtue of said acquisition and succession it is the owner of same, and it prays accordingly.
From a judgment in favor of defendants plaintiff appeals.
[1] Defendants in their supplemental brief call our attention to the fact that they have pleaded in the lower court an exception of no cause of action, which was overruled by the trial judge, and they ask, us to review that ruling and to maintain their exception. They are appellees before this court, and have filed no answer to the appéal. The ruling complained of is final as to them. Hibernia Bank & Trust Co. v. Whitney, 130 La. 817, 58 South. 583; Lehman Dry Goods Co. v. Lemoine, 129 La. 385, 56 South. 324.
The following stipulation appears on each of the policies:
“The insured may at any time, and from time to time, change the beneficiary, provided this policy is.not then assigned. Every change of beneficiary must be made by written notice to the company at its home office, accompanied by the policy for indorsement of the change thereon by the company, and unless so indorsed the change shall not take effect. After such indorsement the change shall relate back to and take effect as of the date the insured signed said written notice of change, whether the insured be living at the time of such indorsement or not. In the event of the death of any beneficiary before the insured the interest of such beneficiary shall vest in the insured.”
[2, 3] The contract of insurance, like every other contract, is the law between the parties thereto, and every stipulation therein contained must be construed as written. Where these stipulations are clear and unambiguous, there is no occasion to seek from the actions or writings of one of the parties to the contract a different construction than that plainly implied by the language of such stipulations. The wording of the above-quoted stipulation irr the two insurance policies with regard to the beneficiaries is so plain, clear, and unambiguous that to resort to extraneous means in its construction would seem more an attempt to alter and vary its meaning than to give it the real effect intended by the parties. So that the letters and writings of the insured, J. Leer Lacombe, in evidence in this case, purporting to show his understanding just prior to his death, as to who was the actual beneficiary of the two insurance policies, are irrelevant, and not entitled to any weight in determining the effect to be given the language used in the contract.
[4, 5] The stipulation under consideration *65 is printed in the policy, a standard form used by the insurer, and while it is not usual to say that a corporation dies, that word being more appropriately applied to living animals or plants, it is not strained construction to apply it to an actually existing corporation when it ceases to exist. No doubt if the terms of the policy had been specially written to adapt it to a corporation as beneficiary, a word more concise in its meaning would have been used. Life insurance policies are mostly made payable to human beings, hence the stereotyped expression “death” of the beneficiary, but it is metaphorically, if not etymologically, correct to apply the expression to a corporation. Hence we hold that, when the First National Bank of Eunice went out of existence, there took place the death of the beneficiary, and under the plain and clear language of the stipulation in the policies the interest of said bank vested in Lacombe, the insured. When the beneficiary bank went out of existence, its legal entity came to an end, and it matters not what the individuals who were associated together to constitute that entity might have done or intended to do in forming another legal entity to succeed the defunct one; they could not, under the plain terms of the policy, substitute the new bank as beneficiary and acquire the interest of the defunct bank without the written consent of the insurer and also of the insured in whom that interest had become vested.
[6] Our learned brother of the district court was of the opinion that the American Bank was entitled to the policies as the legal representative of the late First National Bank, but counsel for defendants in his argument before this court did not press the correctness of that proposition. It could not be reasonably contended that, if Lacombe’s beneficiary had been a person and that person had died before him, the beneficiary interest would have continued to remain in the beneficiary’s heirs or his legal representatives, for that would be clearly in conflict with the plain language of the contract. Of course if Lacombe had died before the First National Bank went out of existence, that bank would eo i'nstanti have acquired a vested right in the policies, would have been entitled to recover the face value of the same, and then, in case of its going into the hands of liquidators, the latter could have collected the policy as its “legal representatives.” Such we believe is the meaning and purport of these words as used in these policies.
[7] It is an universally accepted principle in all jurisprudence that in any life insurance policy where the right is reserved to the insured to change his beneficiary, such as is stipulated in these policies, no beneficiary can acquire a vested right until after the happening of the condition on which they were issued; that is, after the death of the insured. Before the happening of that event, the beneficiary can neither assign nor transfer to his successor, or any one else, any rights in the policy, for he owns no rights therein. How then could the First National Bank of Eunice transfer the policies or assign them to the American Bank & Trust Company?
It is our opinion that the moment the First National Bank of Eunice surrendered its charter, though it might have continued to exist through its liquidator solely for the purpose of liquidation, it disappeared and lost its existence as a legal entity; that the beneficiary interest in the policies became vested, under the clear and plain language of the contract, in the insured; that the insured never divested himself of that interest; and that the plaintiff as administratrix of his succession is entitled to collect the same.
It may be that defendants are entitled to reimbursement of premiums paid by the banks, but that issue is not tendered by the pleadings.
*67 For these reasons the judgment appealed from is avoided and reversed, and it is now ordered that there be judgment in favor of plaintiff, and it is further ordered that defendants surrender to her the two life insurance policies described in her'petition, to the end that she might proceed to collect them in her capacity of administratrix of the succession of J. Leer Lacombe.