## BROWN v. LIFE & CASUALTY INS. CO. OF TENNESSEE.*

### No. 4410.

Court of Appeal of Louisiana. Second Circuit.

March 6, 1933.

Harry V. Booth, of Shreveport, for appellant.

C. F. Currier, of Shreveport, for appellee.

MILLS, Judge.

Plaintiff, in this case, on the 20th day of August, 1931, at about 8 o'clock in the evening, was standing near the curb, on the southwest corner of Hotchkiss street and Pierre avenue in the city of Shreveport, waiting for the traffic light to permit his crossing. A Ford truck coming from the west on Hotchkiss street, traveling at a rapid rate of speed, on the right-hand side of the street on reaching Pierre avenue made a quick turn to the left into Pierre avenue. The truck was loaded with small pipe tied together at the end with a piece of wire. This wire was not in

---

*Rehearing denied April 28, 1933.

any way attached to the truck. The pipe projected six or eight feet out of the back of the truck. As the truck made the left turn the sweep of the projecting pipe extended over the curb to where plaintiff was standing. Though he threw up his arm to protect himself, a loose end of the wire struck him, injuring his arm slightly, and his eye seriously. His physician testifies that the sharp end of the wire pierced the eye ball deep enough to touch the lens, causing it to become opaque. According to plaintiff, his sight failed rapidly after the accident, and, by September 10th or 12th, he could not see at all.

On September 15th, a traumatic cataract had begun to form. On October 13th, the date of his last visit to the eye specialist, he could see a moving light, but could not distinguish objects. He had no practical sight in the eye. That was his condition at the time of trial. His physician would not advise an operation, which would serve no useful purpose.

At the time of the accident plaintiff held what is termed an "Industrial Travel and Pedestrian Policy" with the Life & Casualty Insurance Company of Tennessee. This policy provides that the holder is insured against bodily injuries received strictly in the manner stated in the policy subject to all the limitations in it contained. That:

"The premium charged in this policy has been adjusted to the liability assumed by placing therein various conditions, exceptions and limitations, and it is the intention of the parties that each of these limitations, exceptions, and conditions are to be literally construed, that none of them are to be stricken out or ignored or disregarded in its interpretation, either on the ground that they are ambiguous or wholly or partially or substantially repugnant or for any other reason, but each is to be given its full and literal meaning, it being further understood by the parties that the premium will buy only such protection as the terms of the policy literally show."

The premium paid was five cents weekly. Among other things insured against, we find the following:

"If insured shall be struck by actually coming in physical contact with a vehicle itself, and not by coming in contact with some object struck and propelled against the person by said vehicle."

The policy allows $500 for the total and irrecoverable loss of the entire sight of one eye. It provides that no indemnity will be paid unless the loss of eyesight occurs within thirty days from the date of accident.

Plaintiff appeals from a judgment of the lower court rejecting his demand.

### Opinion.

The case presents only three issues for our consideration: Was plaintiff struck and injured by the vehicle itself? If so, was the loss of sight total and irrecoverable, and, Did the loss occur within thirty days after the accident? As to the last two questions we have no difficulty in agreeing with the affirmative finding of the learned trial judge.

Because of the very liberal construction given insurance contracts by many courts, the first question is more troublesome.

It seems, from an examination of previous decisions involving this same defendant, that until recently the word "itself" did not appear after vehicle, in the policies of the company; neither did they contain the clause concerning objects propelled against insured by a vehicle, or the clause as to the literal construction of the policy. It is reasonable to assume, as counsel for plaintiff in his brief suggests, that these additions are due to two late decisions against it; that of Manness v. Life & Cas. Ins. Co., decided by its own Tennessee court in 1930, and reported in 161 Tenn. 41, 28 S.W.(2d) 339, wherein it was held that an eye injury caused by a stone thrown from a road by a moving automobile was covered by a policy insuring the holder against injury by being struck by a vehicle. This case was decided on the theory that the automobile was the proximate cause of the injury. The other case, Gilbert v. Life & Cas. Ins. Co., arose in Arkansas. It was decided in February, 1932, and is reported in 185 Ark. 256, 46 S.W.(2d) 807. It held that a person killed by the lash of a cable attached to a tractor, which slipped from a stump while being pulled by the tractor, was injured by a vehicle.

In both these cases the policy read "vehicle" without the restricting word "itself," and apparently did not contain the provision quoted supra as to the literal construction of the contract.

Other cases cited by plaintiff are not directly in point. In Kennedy v. Maryland Casualty Co. (D. C.) 26 F.(2d) 501, 502, the decision was that one changing a flat tire was engaged in " 'repairing' or 'adjusting' some part of the automobile." This is a Louisiana case decided by Judge Dawkins.

In Union Indemnity Co. v. Storm, 86 Ind. App. 562, 158 N. E. 904, it is held that a person injured while changing tires was "operating" an automobile.

To the contrary, the ruling in Gant v. Provident Life & Acc. Ins. Co., 197 N. C. 122, 147 S. E. 740, 741, a North Carolina case, was that one struck by a plank thrown by the revolving wheel of an automobile could not recover on a policy insuring plaintiff against being struck by a moving automobile. The court in this case aptly said:

"If the language of the policy is uncertain or ambiguous, and is susceptible to more than one construction, the court will adopt and apply that construction which is most favora-

ble to the insured. If, however, there is no uncertainty or ambiguity in the language of the policy there is no occasion for judicial construction; the rights and liabilities of the parties must be determined in accordance with the plain, ordinary, and popular sense of the language which they have used in their contract."

In a Georgia case, that of Harley v. Life & Casualty Ins. Co., 40 Ga. App. 171, 149 S. E. 76, the policy sued on reading "vehicle" without further qualification, the ruling was that a nut flying off the wheel of a passing automobile was not the automobile or a part thereof.

So, in Inman v. Life & Cas. Ins. Co., 164 Tenn. 12, 45 S.W.(2d) 1073, another Tennessee case, where the policy specified "vehicle," the court said that one riding on a load of furniture in a truck, struck on the head by an overpass, was not injured in an accident to the vehicle.

■ Counsel for plaintiff contends that insurer by adding after the words "vehicle itself" the further clause, "and not by coming in physical contact with some object struck and propelled against the person by said vehicle," enlarged the first clause to make the contract include all cases not excepted by the second clause.

We think the Manness Case, cited, supra, caused the insertion of this second provision; that it was intended only to recite a specific instance excepted, and not to enlarge the term "vehicle itself." This construction is made more reasonable by the clause in the policy, quoted supra, which exactly and definitely provides for a literal construction of the terms of the contract.

■ The premium paid on this policy was five cents per week. The policy says "the premium will buy only such protection as the terms of the policy literally show." While it is true the amount of the premium cannot affect the plain terms of the contract, it is a fact to be taken into consideration in construing doubtful clauses in the policy. Manuel v. Metropolitan Life Ins. Co. (La. App.) 139 So. 548.

Though the parties are not supposed to intend a contract of insurance so limited in scope as to be valueless, such a situation does not confront us here. The usual injury from an automobile results from being struck and run down by the vehicle itself. This is insured against. All that is excluded is the freak or unforeseen accident such as that occurring in the present case. This is not unreasonable, considering the premium paid and the other natural contingencies covered by the policy.

■ We are thoroughly familiar with and approve of the rule that ambiguities and doubtful clauses in insurance policies should be strongly construed against the insuring company which draws and prepares the contract. Corporation of Roman Catholic Church of Eunice v. Royal Ins. Co., 158 La. 602, 104 So. 383.

■ It is also the rule in this state that when a provision of a policy is plain, it is the legal contract of the parties, and is the law of the case. Manuel v. Metropolitan Life Ins. Co. (La. App.) 139 So. 548.

Our Revised Civil Code provides as follows for the construction of contracts in general:

Article 1901. *"Effect in general.*—Agreements legally entered into have the effect of laws on those who have formed them.

"They cannot be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. They must be performed with good faith."

Article 1945. *"Abrogation or modification— Construction according to intention of parties.* —Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:

"First—That no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;

"Second—That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;

"Third—That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;

"Fourth—That it is the common intent of the parties—that is, the intention of all— that is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract."

■ The law of insurance is the same in Louisiana as in other states. Barry v. La. Ins. Co., 12 Mart. (O. S.) 493; Brooke v. La. Ins. Co., 5 Mart. (N. S.) 530, 542.

■ Like other contracts the cardinal rule is to give effect if possible to every part of the agreement. Wallace v. Ins. Co., 4 La. 289; Shuff v. Life & Casualty Ins. Co., 164 La. 741, 114 So. 637.

■ A contract of insurance, like every other contract, is the law between the parties, and every stipulation therein must be construed as written. Dorsett v. Thomas, 152 La. 60, 92 So. 734; Lewis v. Metropolitan Life Ins. Co. (La. App.) 142 So. 262.

■ The intention of the parties must be sought in the instrument itself. Bradley v. Nashville Ins. Co., 3 La. Ann. 708, 48 Am. Dec. 465; Collins v. Life & Casualty Co. of Tenn., 8 La. App. 332; Laporte v. N. American Acc. Ins. Co., 161 La. 933, 109 So. 767, 768, 48 A. L. R. 1086.

In the last-cited case, in holding that a motorcycle is not a motor-driven car, this

court said that a policy which "provides indemnity for loss * * * as herein limited * * *" is plain notice to the public that the liability is restricted to accidents "incurred only under the particular circumstances and conditions stated in the policy." In construing the policy, it took into consideration the premium of the "negligible sum of 50 cents per year."

We find the same rule for the construction of insurance policies followed by the United States Supreme Court. The intention of the parties is gathered from the policy alone. Home Ins. Co. v. Balt. Warehouse Co., 93 U. S. 527, 23 L. Ed. 868.

█ The rules established for the construction of written instruments apply to contracts of insurance equally with other contracts. Liverpool & London & Globe Ins. Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 460.

█ Effect must be given to an insurance policy according to the fair meaning of the words used. Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308.

█ The canon of construction that where the terms of an insurance policy are of doubtful meaning, construction favorable to the insured will be adopted, furnishes no warrant for avoiding hard consequences by importing into contracts an ambiguity which otherwise would not exist, or, under the guise of construction, forcing from plain words unusual and unnatural meanings.

█ Contracts of insurance must be construed according to the forms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense. Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416.

The same rules have been adopted in the common-law states generally. Corpus Juris, Vol. 32, p. 1147, et seq.; R. C. L., Vol. 14, p. 925, § 102, et seq.

In the last-cited authority we find:

"Courts have sometimes been too astute in their search for reasons to maintain the liability of insurance companies in the face of conditions limiting such liability. And yet a contract of insurance, in this regard, is no different from other contracts; and the function of courts is to construe them, not to make them."

An examination of the authorities discloses that the rules laid down for the liberal construction of insurance policies in favor of the insured apply with the same force to all contracts.

█ In the present case, if the wire which struck plaintiff had been attached to the automobile and used to secure the pipe to the truck, it would come under the reasoning, which we think was correct, in the Gilbert Case, supra. But it was not attached to or in any way an accessory to the truck. It was fastened around the end of some small pipe to hold them together for handling and shipment. The wire then was only a part of the load, and was not an accessory to or part of the truck.

Is the load carried by a truck a part of the truck itself?

The load is that which is deposited when the destination is reached. The vehicle is what comes back. It is not conceivable that a load of watermelons or chickens could, except by a most strained construction, be regarded as a part of the truck itself. If one having purchased a truck, upon going to get it, found it loaded with brick, would it ever occur to him that the brick were included in the purchase? If a driver was told to ascertain the weight of a vehicle, would any, but an imbecile, drive the loaded truck upon the scale? If, in other connections, the load is not considered by ordinary reasonable persons a part of the vehicle, it cannot be so considered in insurance policies, which we have been at some pains to show are construed as are other contracts. The distinction between the load carried and the vehicle itself is too plain and obvious to admit of ambiguity or doubt. That being true, under the rules of construction laid down above and the plain terms of this policy, plaintiff cannot recover.

The judgment rejecting plaintiff's demand is affirmed.

DREW, J., dissents.