## FLOURNOY v. SUN LIFE ASSUR. CO. OF CANADA et al. *

### No. 5064.

Court of Appeal of Louisiana. Second Circuit.

June 4, 1935.

M. C. Redmond, of Monroe, for appellant.

Hudson, Potts & Bernstein, of Monroe, for appellee Mattie Cyrus.

Shotwell & Brown, of Monroe, for appellee Sun Life Assur. Co.

TALIAFERRO, Judge.

The Sun Life Assurance Company of Canada, on January 22, 1932, issued to the Missouri Pacific Railway Company a group policy wherein and whereby, on the terms and conditions therein expressed, and for the premiums therein fixed, the lives of all of its employees eligible thereto under the policy's terms were assured. When this policy became effective, Thomas Flournoy, colored, was, and had been for many years immediately prior thereto, in the railway company's employ. He was eligible to the benefits and protection the group or master policy was intended to provide, and, accordingly, the insurance company issued to him its formal certificate of assurance for $2,000, in which his wife, Katie M. Flournoy, was designated beneficiary.

The master policy contains the following stipulation touching the assured's right to change the beneficiary: "XIII. *Change of Beneficiary.*—The employee shall have the right to change the beneficiary or beneficiaries at will, and this from time to time, by written request on the company's form furnished for that purpose, provided his interest in this policy be not then assigned, but such change shall take effect only upon receipt of

*Rehearing denied July 15, 1935.

such request at the Head Office of the company."

The certificate issued to Tom Flournoy contains the following stipulations relative to the change of beneficiary:

" * * * Any right given by the policy to the employee to change the beneficiary shall continue during the period mentioned in (3) above."

"*Change of Beneficiary.*—Whenever a change of beneficiary is required this certificate together with a completed Change of Beneficiary Form should be given to the employer, who will forward both to the Assurance Company in order that the change may be recorded. * * *"

In May, 1933, it was discovered that Flournoy was in advanced stages of pulmonary tuberculosis. Thereafter, he rendered no service to the railway company, and in February, 1934, after furnishing the assured with required proof, he was pronounced totally and permanently disabled to perform any work and entitled to the "Total and Permanent Disability Benefits" provided in the policy. Two payments on that account were made to him before his death on June 14, 1934. He died in a hospital of the railway company, in Alexander, Ark.

On October 30, 1933, Flournoy changed the beneficiary in his certificate to his mother, Mattie Cyrus, and on November 17th thereafter, he substituted his wife as beneficiary, displacing his mother as such, and on May 10th, he again named his mother as beneficiary. To effect this change in each instance, he signed formal request to the assurer to make the change, and in each instance the change was approved and duly indorsed on the certificate which had been sent to the assurer for that purpose. The last change was approved on June 4th, ten days before Flournoy died.

Katie Flournoy, surviving wife of the deceased and original beneficiary of the certificate of assurance, instituted this suit against the assurance company and Mattie Cyrus to recover the full amount of insurance stipulated therein. In her original petition, she attacks the validity of the last change of beneficiary on the grounds, viz.: (1) That the assured on that date and for several months prior thereto was mentally incapable of making such change; and (2) that when so afflicted, Mattie Cyrus, his mother, visited him while confined in a hospital and, through fraud and trickery, induced him to change the beneficiary to herself, at a time when he was not in a mental condition to realize what he was doing.

After defendants answered the original petition, filing therewith a copy of the master policy, plaintiff filed a supplemental and amended petition wherein she alleged that because of the fact that she was not in possession of the certificate of insurance when her counsel prepared her original petition, he, for lack of definite information as to its provisions, in some respects, alleged in said original petition that the last change of beneficiary under the policy "was procured through fraud and trickery," thereby seemingly, though not intentionally, conceding that the assured had the right to effect such a change at will; that after viewing the copy of the policy filed by defendant, and learning therefrom that the assured did not reserve the right to change the beneficiary at will, and she having been originally designated beneficiary, and not having consented to the change, the vested right accruing therefrom to her was unaffected by the attempted change and, therefore, the proceeds of the policy belong to her. In this (first) amended petition, she alleges in the alternative, that should the court find and hold that deceased had the right, under the policy contract, to change the beneficiary at will, the attempted change was abortive because of his mental incapacity at the time to do so. In a second supplemental petition, it is alleged that she learned for the first time from the assurer's answer that her deceased husband became totally disabled and had been so rated by the assurer, and that it had acknowledged liability to him on that account for the full amount of the policy, and said amount thereby became due and payable to deceased, but that the assurer claimed the right under the policy to elect to satisfy its liability thereunder by making 60 equal payments of $36 each, one of which, it is admitted, was made prior to the assured's death; the balance being deposited in the registry of the court to be paid over to the successful contestant herein.

In view of these facts and circumstances, she alleges and contends, in the alternative, that she is entitled to three-fourths of the proceeds of the policy because when the assured recognized deceased's total disability and elected to pay him the full amount of the policy in monthly installments, said amount then became due and payable to him, and therefore became his property, and fell into his succession at his death; that being community property, one-half of it devolved upon her, as widow, and the other half was

inherited by her and the mother in equal proportions.

Defendants deny the right of plaintiff to recover the proceeds, or any part thereof, of the insurance money in controversy for any reason or on any account. They affirmatively aver that the assured reserved the right in the insurance certificate, as was recognized and provided for in the master policy, to change the beneficiary therein, at will; that he·did so at a time he well knew the effect and significance of his acts, then being in full possession of his mental faculties; that the change was made in due form and was approved by the assurer prior to the death of assured; and they argue that the fact that the assurer, in keeping with the provisions of the policy, was obligated to, and did, agree to pay deceased the amount of the policy in monthly installments, after his total disability had been established, did not strip said insurance of its character as such, and did not thereby vest in the assured an unconditional and indefeasible property right to the total sum of said installments, such a property right as might be transmitted to his widow and heirs at his death.

There was judgment for defendants, as by them prayed for, and plaintiff appealed.

█ The provisions of the master policy and of the certificate of insurance issued to Thomas Flournoy, quoted above, clearly disclose that he reserved the right, or that the right was reserved for him, to change the beneficiary of the certificate at will, upon complying with the requirements· of the assurer. He did this, and his action was duly approved by the assurer. This effected the change. Toussant v. National Life & Accident Ins. Co., 147 La. 977, 982, 86 So. 415; Alba v. Provident Sav. Life Assurance Society of N. Y., 118 La. 1021, 43 So. 663; Dorsett v. Thomas, Examiner, 152 La. 60, 92 So. 734; Pollock v. Pollock, 164 La. 1077, 115 So. 275; Cooley's. Briefs on Insurance, Vol. 7, pp. 6399, 6406. · ·

Plaintiff's counsel concedes that the charge that Flournoy was mentally incapable of exercising the volition necessary to legally change the beneficiary under the insurance certificate has not been substantiated by proof. The record is all to one accord that the assured well knew what he was doing when he signed the request to the insurer to indorse the change on the certificate. He sent the request to his mother the day he signed it, to be delivered by her to the railway company for transmission to the assurer. It was accompanied by a letter to her where-

in he made the statement that, "I guess it will stay this way this time," which reflects that he was not unmindful of the fact that changes of beneficiary had theretofore been made by him. There is no evidence whatever in support of the allegation that fraud or trickery was practiced by the mother on deceased in order to induce him to substitute her as beneficiary. She was then in the city of Monroe, La. The record does not reveal the motive for deceased persisting in the desire to devolve upon his mother as beneficiary, at his death, all benefits under the policy; premumably he had good reasons for so doing. It was unnecessary to the efficacy of the change to disclose these.

█ With respect to total and permanent disability benefits, the master policy provides that if satisfactory proof is submitted on behalf of any assured otherwise eligible for such benefits, he is " * * * totally and permanently disabled of bodily injury or disease and is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation, * * * the Company, in full settlement of all obligations in respect of such employee under this policy, will pay, subject to all terms of this provision and in accordance with the following table, in monthly installments, the amount of assurance on the life of such employee effective at the date on . which total disability commenced."

The table referred to shows that for policies of $1,500 and over, the amount thereof will be paid in 60 installments at rate of $18 per thousand dollars of insurance per month. The first installment thereunder became due and payable at a time therein fixed. It is further stipulated in the master policy, that:

"X. Payment to the employee in respect of whom claim under this provision is made, or to any person to whom the Company may pay in event of the death of such employee, shall be a valid discharge to the company for any amount payable under this total and permanent disability provision. If any installments remain unpaid at the death of the employee, such installments may, with the consent of the employer, be commuted at 3½% interest per annum compounded yearly. * * *

"Notwithstanding evidence in any case shall have been accepted by the Company as satisfactory proof of total and permanent disability the employee shall, as often as required by the Company, furnish evidence of the continuance of such disability. If the employee shall fail to furnish such evidence, or if he shall so far recover so as to be able

to perform any work for compensation or profit, or engage in any gainful occupation, no further installments shall be paid, but assurance on the life of such employee may be then reinstated hereunder subject to all the terms of the policy and shall be limited in amount to the value of the installments then remaining unpaid commuted at 3½% interest per annum compounded yearly."

Plaintiff deduces from these stipulations and argues forcefully that from the time the assurer was satisfied with the assured's condition of total and permanent disability and conceded he was, for this reason, entitled to the monthly disability payments plainly provided in the policy, the character of the assurer's liability under the contract underwent a metamorphosis; it ceased to be insurance and became a fixed liability of the assurer; the relation of creditor and debtor arose and the rights of the creditor could not be, and were not in fact, assigned by simply changing the beneficiary under the policy. We do not think this position tenable.

It is not correct, as alleged by plaintiff, that the assurer had the privilege of electing, under the terms of the policy, to pay the monthly installments to deceased after being satisfied of his condition of total disability. It was obligatory under the contract that assurer do this. It had no discretion in this respect. No premiums were paid, and none was demandable, after the assurer began payments under the total disability benefit clause. However, the policy recognized that a condition of total disability, thought to be permanent, may not in fact be so. It may cease to be total and it might develop that the condition of disability, whether total or partial, be not permanent. These contingencies are taken care of in the contract. Evidence of continuance of the disability may be required of the assured. If he should decline to do so, or "if she shall so far recover as to be able to perform any work for compensation or profit, or engage in any gainful occupation, no further installments shall be paid."

Our interpretation of these stipulations is that the insurer is obligated to pay the monthly installments for the full term named in the policy; that should the assured's physical disability cease to be total, allowing him to engage in some gainful occupation, no further disability payments would be due or demandable and all liability under the policy at an end. As a contract between them, it would have been executed. This is not unfair or inequitable to the assured, because, before being disabled, he had the protective benefits of the policy, and, after establishing his disability, he paid no premiums, but was paid monthly amounts, in keeping with the policy's provisions. In such event the insurance could be reinstated, but it would be, in its nature, under a new contract, and for no more than the face of the old policy, less disability payments made thereunder. This interpretation contravenes plaintiff's theory and contention that the policy was unconditionally converted into a lump sum disability benefit, a fixed liability to the insured and vested in him an indefeasible property right.

It is our conclusion, after a careful study of the master policy and certificate issued thereunder, that the character of this policy as life insurance was unaffected by the conditions which authorized putting into effect the disability benefit clause therein. The change in substance was more apparent than real. The liability of the assured continued to be as it had been with these differences, viz., that payment of further premiums was waived, the insurance being payable monthly to the assured because of his disability, with the condition that should the disability cease, no further liability whatever under the policy would remain. When assured's disability was recognized as entitling him to the benefits provided in the policy and he was relieved of further premium payments, the policy, in a way, became paid-up insurance, subject to be reduced by disability payments from month to month, and subject to results that would follow the assured's ability to resume work. This interpretation is supported by the language of the disability clause, wherein it is stated that the assurer "will pay * * * in monthly installments, the amount of assurance on the life of such employee effective at the date on which total disability commenced." This means that the assurance would be paid to the employee on a monthly basis until entirely consumed, or the disability ceased, or death intervened; and that in case death came before the full amount had been paid to him, the whole matter would then recur upon the terms of the policy as a life insurance contract, and the rights of the beneficiary determined thereby.

Counsel of neither side has cited any authorities supporting their respective contentions on the question we are discussing. We have made an extended search for some, but have not been successful.

We think the judgment appealed from correct. It is hereby affirmed.