Edward F. HARRIS, et al.,
Plaintiffs–Appellants,

v.

WESTCHESTER FIRE INSURANCE
CO., Defendant–Appellee.

No. 89–4483.

United States Court of Appeals,
Fifth Circuit.

July 2, 1990.

Catherine G. Brame, Neblett, Beard & Arsenault, Richard J. Arsenault, Alexandria, La., for plaintiffs-appellants.

Charles F. Wartelle, Accardo, Edrington & Golden, LaPlace, La., for Intervenor Utica Mut.

John B. Honeycutt, Jr., Percy, Smith, Foote & Honeycutt, Alexandria, La., for defendant-appellee.

Before POLITZ, KING, and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Edward and Mary Harris, both individually and on behalf of their children (collectively, Harris), and Utica Mutual Insurance Company, as intervenor, appeal the district court's grant of summary judgment in favor of Westchester Fire Insurance Company. Concluding as a matter of law that, until its termination, a lease of heavy equipment by a company engaged in that business is not a completed operation, and is thus not excluded from comprehensive general liability coverage by a completed operations exclusion until the lease term has expired, we reverse and remand.

*Background*

In August 1985, Edward Harris's ankle was crushed in the course and scope of his employment when the crane he was operating overturned. The crane had been leased by Harris's employer, Chemipulp, Inc., from Gilchrist Machinery Company, Inc. Gilchrist was bankrupt. Harris sued the Westchester Fire Insurance Company, Gilchrist's insurer under a comprehensive general liability policy at the time of the accident. Harris alleged that his injury was caused by Gilchrist's negligent failure to repair a faulty hydraulic valve on the crane. Utica intervened for the worker's compensation benefits it had paid to or for Harris.

Westchester moved for summary judgment, contending that the subject comprehensive general liability policy excluded coverage for completed operations and products hazards. Westchester's legal premise, as developed in memoranda in support of its motion, was that in insuring Gilchrist's "operation" it had insured the

leasing of equipment, but not the lease contracts; thus, once a lease was signed and equipment delivered to the lessee, both Gilchrist's "operation" and Westchester's exposure terminated, notwithstanding any duty Gilchrist had to repair the leased equipment during the lease term. Harris countered that Westchester was attempting a unilateral redefinition of Gilchrist's operation and, to be meaningful, coverage had to extend to protect Gilchrist against losses caused by its negligence in performing its duties as lessor.

The district court initially concluded that Gilchrist's operation was the leasing to others of contractors' equipment and requested that the parties brief the issue of when Gilchrist's operation could be deemed "completed" under the terms of the Westchester policy. Following the submission of briefs the court granted summary judgment to Westchester, holding that Gilchrist's operation was complete when the crane was delivered to Chemipulp, rather than when the lease term expired as contended by Harris. Both Harris and Utica timely appealed.

*Analysis*

Our jurisdiction in this case is premised upon diversity of citizenship; thus the substantive law of Louisiana governs our interpretation of the Westchester policy. Because "[t]he law of insurance is the same in Louisiana as in other states," *Calcasieu–Marine Nat. Bank v. American Employers' Ins. Co.*, 533 F.2d 290, 295 (5th Cir.) (quoting *Brown v. Life and Cas. Ins. Co.*, 146 So. 332, 334 (La.App.1933)), *cert. denied*, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976), however, we may also seek guidance from relevant case law of other jurisdictions.

This appeal presents a pure question of law. Accordingly our review of the district court's interpretation of the Westchester insurance policy is plenary. *Ross v. Western Fidelity Ins. Co.*, 872 F.2d 665 (5th Cir.), *clarified*, 881 F.2d 142 (1989). Summary judgment may be granted under Fed. R.Civ.P. 56 if the record reflects no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Applying this same standard on appeal, *Moore v. Mississippi Valley State University*, 871 F.2d 545, 548 (5th Cir. 1989), we view all evidence in the light most favorable to the nonmovant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577 (5th Cir.1986).

As a predicate for determining the point of completion of Gilchrist's operation for purposes of the completed operations hazard exclusion, we must determine the nature and essence of Gilchrist's business operation. Although the policy does not specifically address this issue, the application by Gilchrist for the liability coverage guides our path. The "operation" for which Gilchrist sought comprehensive liability coverage was defined as "Contractors Equip. Rental to Others." The district court found this to be a sufficient basis for concluding that Gilchrist's operation in the instant case was the lease of a crane to Chemipulp. We agree.

From this linchpin we address the critical question of when that operation was completed, which signals the point at which Westchester's exposure ended by virtue of the completed operations exclusion. The policy contains these relevant provisions:

> "[C]ompleted operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
>
> (1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
>
> (2) when all operations to be performed by or on behalf of the named insured

at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The district court concluded that after delivery of the crane the only duty Gilchrist had to Chemipulp was to provide repair and maintenance as needed. In the absence of any other affirmative obligations during the lease term, the district court concluded that Gilchrist's operation should be deemed "completed" upon delivery of the leased crane. We do not agree. The district court's analysis skirts the central inquiry and overlooks Gilchrist's duty as lessor to maintain its lessee in peaceful possession during the term of the lease. La.Civil Code art. 2692.[1] This duty included, of course, delivering the crane and keeping it repaired and fit for the use for which it was leased. It also included protecting its lessee from any intrusion or interference by anyone who would violate its peaceful possession of the crane. *Id.*

This analysis is consistent with the provision of the Westchester policy quoted above, which declares that operations *which are otherwise complete* cannot be made incomplete by virtue of the ongoing duty to make repairs. The question remains the same—was the operation for which Gilchrist was insured complete at the time of Harris's injury? We think not. As we perceive it, the difficulty experienced by counsel and the court, both trial and appel-

late, is caused by the fact that the policy at issue is at best an awkward fit for Gilchrist's business operation. We are obliged to pull a four-fingered glove over a five-fingered hand. The policy was not tailored for an equipment lessor's business operation and it sags in places and binds in others. The comprehensive general liability policy used by Westchester to insure Gilchrist's leasing operation is better suited to a different kind of business operation, such as the construction example utilized by the district court:

For example, a builder constructs a radio tower for the owner. The owner takes possession. Shortly thereafter, the tower falls causing personal injury and property damage, for which the builder would be liable. The completed operations exception would nullify insurance company responsibility to the builder and owner. If a fall to ruin had occurred prior to the completion of the tower, then the general liability provisions of the builder's policy would provide protection.

We can readily accept the conclusion that a builder's "operation" is complete when the building's owner takes possession of the finished building. It does not follow, however, that a lessor's "operation" is complete when the lessee takes possession of the item leased. Article 2695 of the Louisiana Civil Code provides:

The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.

Similarly, article 2717 provides that:

The expenses of the repairs, which unforeseen events or decay may render nec-

---

1. La. Civil Code art. 2692 provides:

The lessor is bound from the very nature of the contract, and without any clause to that effect:

1. To deliver the thing leased to the lessee.

2. To maintain the thing in a condition such as to serve for the use for which it is hired.

3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease.

essary, must be supported by the lessor, though such repairs be of the nature of those which are usually done by the lessee.

Furthermore, as noted above, the lessor must maintain the lessee in undisturbed peaceful possession throughout the lease term. La.Civil Code art. 2692.

Taken together, then, Gilchrist was obliged to deliver to Chemipulp a crane fit for the purpose intended and to maintain it in a proper state of repair. This obligation existed for the duration of the lease and was manifestly a core element of Gilchrist's leasing operation. In effect Gilchrist said to Chemipulp: "I have a crane that I will lease to you. It can do the job for you. It is free of vices and defects. I will keep it repaired as long as you lease it. And you may rest assured that I will protect your possession from all others." *Cf. Southern Guaranty Ins. Co. v. Scott,* 266 So.2d 602 (Ala.1972) (where purchaser of product had yet to return tank in which it was furnished to sellers, who would then weigh the tank to compute charges due, sellers' operations were not yet complete at time of purchaser's injury for purposes of completed operations hazard exclusion).[2]

We cannot accept the premise that Gilchrist's obligations ended when it delivered the crane to Chemipulp. To do so would require that we accept the concomitant premise that the lease ended just as it began. This cannot be. The term of the lease was the period the crane was used by the lessee. The undisputed evidence reflects that the parties intended that the lease would continue in effect until Gilchrist removed the crane from the Chemipulp jobsite. Inasmuch as the crane was being leased, was on the jobsite, and was in use at the time of Harris's accident, we conclude that Gilchrist's business operation of leasing contractors' equipment to others was then not yet complete for purposes of

the completed operations hazard exclusion of the Westchester policy.

The summary judgment in favor of Westchester Fire Insurance Company is REVERSED and the matter is REMANDED for further proceedings.

---

2. That Gilchrist, as its president maintained in his deposition, may have required its lessees to obtain insurance to cover personal injury or property damage resulting from their use of its equipment is of no moment in determining when Gilchrist's operation was complete. In holding that Westchester retained exposure for the negligence, if any, of Gilchrist until its equipment leases expired, we do not hold that Westchester insured against the negligence of Gilchrist's lessees or their employees.