273 So.2d 707 (1973)
Grace Q. EDMONSTON, Plaintiff-Appellant,
v.
A-SECOND MORTGAGE COMPANY OF SLIDELL, INC., et al., Defendants-Appellees.
No. 9163.
Court of Appeal of Louisiana, First Circuit.
February 1, 1973.
Rehearing Denied March 14, 1973.
Writ Granted May 17, 1973.
*708 Frank B. Hayne, III, New Orleans, for plaintiff-appellant.
Leopold Stahl, New Orleans, for defendants-appellees.
Before LANDRY, TUCKER and PICKETT, JJ.
JOHN S. PICKETT, Judge ad hoc.
This action was instituted by the plaintiff, Mrs. Grace Q. Edmonston, to recover the sum of $14,512.67, plus penalties, attorney's fees, interest and costs, from defendant, Standard Life Insurance Company of the South, or, alternatively, from defendants, A Second Mortgage Company of Slidell, Inc., C. A. Corporation and U. S. Thrift and Loan Corporation. From a judgment rejecting the plaintiff's demands, she has appealed devolutively.
For convenience, defendant, Standard Life Insurance Company of the South, will hereinafter be referred to as Standard, and the defendant, A Second Mortgage Company of Slidell, Inc., will be referred to as A Second.
The plaintiff alleges the Standard issued to Lucien E. Edmonston, a life insurance policy containing an $8,000.00 death benefit, plus a double-indemnity accidental death rider. She was made the beneficiary under the terms of the policy. She obtained a loan in the amount of $16,000.00 from Standard. In order to secure the payment of the loan, she executed a mortgage on her property, located on Oak Street, Pearl River, Louisiana, which she acquired prior to her marriage to Mr. Edmonston. The life insurance policy was pledged to Standard as additional collateral security for the above-mentioned $16,000.00 mortgage. Thereafter, plaintiff and her husband borrowed $4,000.00 from A Second, and they executed a second mortgage covering the same property mortgaged to Standard to secure the payment of said loan. On October 18, 1966, plaintiff and her husband executed a dation en paiement whereby she transferred the ownership of her Oak Street property to A Second in exchange for the cancellation of its mortgage and the assumption of the payment of Standard's mortgage. Plaintiff's husband died of accidental causes on March 28, 1967. As a result of his death, the double-indemnity provisions of his life insurance policy issued by Standard became due and payable in the sum of $16,000.00. Standard, claiming a balance due of $14,412.87 on its mortgage, applied that amount of the $16,000.00 benefit owed under the double-indemnity rider of the policy and granted a discharge of its mortgage. The plaintiff further alleges that she is entitled to recover the sum of $14,512.87, which Standard wrongfully applied on the payment of the first mortgage. She complains that Standard breached its fiduciary responsibility as an insurer, mortgagee, and assignee of the life insurance policy which became payable upon the death of her husband. Alternatively, plaintiff alleges that A Second, having assumed the payment of the first mortgage held by Standard, should be required to pay her the sum of $14,512.87 appropriated by Standard in liquidation of its first *709 mortgage. In the further alternative the plaintiff contends that A Second was unjustly enriched, or that the dation en paiement was lesionary.
During the trial of this case on its merits, the following facts were stipulated:
Mrs. Grace Q. Edmonston, in 1958, which was prior to her marriage to Lucien E. Edmonston, purchased a lot and house on Oak Street, in Pearl River, Louisiana. Her name at the time she purchased the property was Mrs. Grace Quave Nunez. The purchase price of the lot and house was $10,500.00. She financed the purchase by a mortgage in favor of the Slidell Savings & Homestead. After her marriage, she mortgaged the property to the defendant, Standard Life Insurance Company of the South, for $16,000.00. She paid off the mortgage to Slidell Savings & Homestead, and it was cancelled. The Standard required her husband, Mr. Lucien E. Edmonston, to join her in the execution of the mortgage; and, also, required each of them to purchase an $8,000.00 whole life insurance policy, which were issued by Standard. They were required to assign the policies to Standard as collaterial security for the mortgage. The policies contained a double indemnity provision in the event of accidental death. The instrument assigning the policies contained a provision that in the event of the death of the insured, Standard could either (a) apply the proceeds of the policy as advance discharge of the mortgage, or (b) pay the proceeds to the named beneficiary. On September 24, 1964, the plaintiff obtained a loan of $4,000.00 from A Second Mortgage Company of Slidell, Inc., and to secure the payment of the loan, executed a note for $7,200.00, payable in 60 monthly installments in favor of A Second.
The plaintiff and her husband encountered financial difficulties; and they agreed with A Second to convey the mortgaged property to it in consideration of the cancellation of the mortgage it held; and the further understanding that A Second would assume the payment of the first mortgage to Standard. However, Standard refused to release the plaintiff and her husband from their obligations under their mortgage; but they agreed to acquiesce in the proposed transfer of ownership. Accordingly, a dation en paiement was executed by plaintiff and her husband on October 18, 1966, conveying the property to A Second, free of all encumbrances except the mortgage to Standard; and the mortgage to A Second was cancelled. Thereafter, A Second made the payments to Standard on the mortgage held by it. The life insurance policies were kept in force by the payment of the premiums.
On March 28, 1967, Lucien E. Edmonston was accidentally killed. As the result of Mr. Edmonston's accidental death, the life insurance policy issued by Standard on his life became due and exigible, including the double indemnity provision. The plaintiff made the proof of the death of her husband; and Standard as the insurer of Mr. Edmonston's life, paid to Standard as the holder of the first mortgage the balance due on the mortgage in the sum of $14,512.87, and paid plaintiff $1,487.13, the balance of $16,000.00 payable under the double indemnity rider.
The assignment of the life insurance policy issued by Standard to Lucien E. Edmonston and assigned by him to Standard to secure the payment of the $16,000.00 loan is as follows:
"For and in consideration of a loan this day made to the undersigned by Standard Life Insurance Company of the South and as collateral security for the repayment of said loan, I hereby sell, assign, transfer, set over and convey unto:
STANDARD LIFE INSURANCE COMPANY OF THE SOUTH
South Roach Street, Jackson, Mississippi
its successors or assigns as their interest may appear, all right, title and interest *710 in and to Policy No. 76611 on the life of Lucien E. Edmonston, issued by Standard Life Insurance Company of the South, subject to the terms and conditions of said policy.
"This assignment is (a) intended to secure any indebtedness of the insured to the assignee as may exist at the time of payment under said policy and (b) expressly limited to so much of the proceeds under the policy as may be necessary to liquidate the indebtedness (whether primary, secondary or contingent) of the insured to the assignee with the remainder of the proceeds of the policy being unaffected hereby. In the event any sum becomes payable under said policy while this assignment is in force or effect, the assignee, at its option and irrespective of whether any part of the indebtedness is past due or not, may receive such payment and apply same to the last payments on said indebtedness or may direct that payment be made to the beneficiary, designated in the policy, without prejudicing its right under the loan or to the indebtedness hereby secured. Upon payment of all indebtedness of insured, this assignment shall become null and void, provided notice of such payment is given in writing to Standard Life Insurance Company of the South."
The above quoted assignment is a contract signed by the plaintiff and her husband. Under its terms they agreed that Standard would have the option to receive any payment that might be due under the terms of the policy and apply such payment to any indebtedness owed to Standard by the insured "irrespective of whether any part of the indebtedness is past due or not." Standard exercised that option, received the proceeds of the policy assigned to it, and applied that part of the proceeds to the liquidation of the indebtedness incurred by plaintiff and her husband. If the contract of assignment is valid, Standard had the legal right to do what it did. Louisiana Revised Civil Code Article 11 explicitly provides:
"Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.
But in all cases where it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."
In the case of Lama v. Manale, 218 La. 511, 50 So.2d 15, our Supreme Court said:
"Where there is a clause in a contract, and that clause is the agreement of the parties, the defense of a lack of knowledge of its existence is untenable. Courts are not created to relieve men of their bad bargains made. Where a clause of a contract is clear and unambiguous, `the letter of it should not be disregarded, under the pretext of pursuing the spirit.'"
The terms of the above mentioned assignment are clear and unambiguous. In fact, the plaintiff admitted that she understood the purpose of the assignment (Transcript 146) The plaintiff has pointed out no statutory authority, nor jurisprudence showing that such a contract is contrary to the public good. Therefore, we find the defendant, Standard, had the legal right to disburse the proceeds of the policy on the life of Mr. Edmonston, as it did. Furthermore, the plaintiff received the balance of the proceeds in the sum of $1,487.13, endorsed and cashed the check therefor, and signed a receipt in settlement of the claim, which reads as follows:
"RELEASE OF CLAIMANT
FOR AND IN CONSIDERATION OF THE SUM OF SIXTEEN THOUSAND AND NO/100 DOLLARS ($16,000.00) to me (us) in hand paid by STANDARD LIFE INSURANCE *711 COMPANY, I (we) do hereby acknowledge full payment and satisfaction of any and all claims due me (us) from said STANDARD LIFE INSURANCE COMPANY (formerly STANDARD LIFE INSURANCE COMPANY OF THE SOUTH) and do hereby discharge and release said Company from any and all liability of any kind whatsoever under or by virtue of Policy (ies) No. 76611 issued by said STANDARD LIFE INSURANCE COMPANY (formerly STANDARD LIFE INSURANCE COMPANY OF THE SOUTH) on the life of LUCIEN E. EDMONSTON I (we) being the person (s) lawfully entitled to the proceeds of said Policy (ies).
IN WITNESS WHEREOF, I (we) have hereunto set my (our) signature (s) on this the 1st day of May, 1967.
 (Signed) Grace O. Edmonston"
It has been repeatedly held that under the law of Louisiana, a contract is the law between the parties, unless the cause is contra bonos mores. We are convinced from an examination of the Transcript, and particularly the plaintiff's own testimony, that the plaintiff understood what she was doing when she signed the contract of assignment of the insurance policy and when she accepted the settlement of the proceeds of the policy and executed a release. Hence, the claim against Standard was properly denied.
The plaintiff contends that A Second was unjustly enriched by being relieved of the payment of Standard's first mortgage. The theory of unjust enrichment is announced in LSA-C.C. Article 1965, which provides:
"The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."
Our Supreme Court in the case of Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422, outlined the requisites of the unjust enrichment theory as follows:
"There are now five prerequisites to the successful suit by actio de in rem verso: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature."
There must be an enrichment. The Trial Judge in his reasons for judgment said:
"A death and a life insurance policy always radically changes the nature of something but I have to take a look at it as these events occurred and on the day of Mr. Edmonston's death, they did not own the property but they were still sitting there as the makers of a promissory note which was held by Standard Life Insurance Company. There was a policy of insurance on his life which, call it pledge or call it assignment, the primary purpose of that insurance was to pay the note and that is exactly what was done with the insurance. Had he lived longer, there would have been less money to apply, but that is a fortuitous event that God controls. As this court sees it, there is no basis under which there has been unjust enrichment or any fraud or anything of that nature perpetrated on this lady..."
As pointed out by the Trial Judge, Mrs. Edmonston was still obligated on the first mortgage note, and if A Second had *712 defaulted on the payment of the note, she would have been responsible for its payment. The Trial Judge correctly found there was no unjust enrichment.
On the question of lesion, LSA-C.C. Articles 1871 and 2590 provide that the value of that which was the subject of the contract at the time it was made is the rule by which the lesion is to be ascertained. The evidence shows that when the property was transferred to A Second, the plaintiff and her husband owed A Second $5,178.74, and that they owed Standard $14,882.17, or a total of $20,060.91. As the consideration for the transfer of the property A Second cancelled its debt and assumed the payment of the first mortgage. For lesion to apply the value of the property at the moment it was transferred would have had to exceed $40,000.00. The only estimate of value appearing in the record was an appraiser's report dated October 3, 1963. Objection to the appraisal was timely made on the grounds that a proper basis or foundation for its admission had not been laid.
The trial court admitted the appraisal over this objection. In so doing, the court fell into error. The appraisal should have been rejected since its author was not available for cross-examination. Moreover, we note that the appraisal was made approximately five years prior to the date on which the mortgage was paid with the life insurance proceeds. Although Mrs. Edmonston herself testified the property was worth $24,000.00, she further acknowledged that when she visited the premises in April, 1966, she found the home flooded with water, the pipes broken and the walls mildewed. In her own words, the property was then "a decrepit mess." Such testimony falls far short of establishing a $40,000.00 valuation which would be required to prove lesion. The burden is on the one asserting lesion to prove value at the time of transfer. Beatty v. Vining, La.App., 147 So.2d 37.
The plaintiff has failed to prove that the property involved has a value double the consideration paid by A Second at the time of the transfer of the property. We find no manifest error in the judgment of the trial court, rejecting the claim of lesion.
For the reasons set forth the judgment of the trial court is affirmed. Costs of this appeal to be assessed against the appellant.
Affirmed.