289 So.2d 116 (1974)
Grace Q. EDMONSTON
v.
A-SECOND MORTGAGE COMPANY OF SLIDELL, INC., et al.
No. 53438.
Supreme Court of Louisiana.
January 14, 1974.
Rehearings Denied February 15, 1974.
*118 Frank B. Hayne, III, Hammett, Leake & Hammett, New Orleans, for plaintiff-applicant.
Kenneth J. Berke, Stahl & Berke, New Orleans, Garic Kenneth Barranger, Barranger, Barranger, Jones & Fussell, Covington, for defendants-respondents.
SUMMERS, Justice.
Plaintiff Grace Q. Edmonston owned a house and lot in Pearl River, Louisiana, as part of her separate estate acquired prior to her marriage to Lucien E. Edmonston. After they were married she and her husband applied for and obtained a $16,000 loan from Standard Life Insurance Company of the South. As a condition precedent to the loan, Standard required plaintiff and her husband to insure their lives for $8,000 each in whole life policies with double indemnity benefits in the event of accidental death. These policies were assigned by the Edmonstons to Standard under an "assignment of collateral security" agreement. The assignment, dated January 7, 1964, was executed contemporaneously with a first mortgage in favor of Standard securing the $16,000 loan bearing upon the Pearl River property.
Terms of the assignment agreement provided that, upon the death of either Mr. or Mrs. Edmonston, Standard would apply the proceeds to discharge the mortgage, or, at their option, pay the proceeds to the beneficiary. The policy insuring Lucien E. Edmonston's life named Grace Q. Edmonston as beneficiary.
*119 Later, on September 24, 1964, plaintiff and her husband negotiated a $4,000 loan from A-Second Mortgage Company of Slidell, Inc. To secure the payment of this loan, the Edmonstons executed a second mortgage in the principal sum of $7,200 in favor of A-Second affecting the Pearl River property.
Two years later the Edmonstons experienced financial difficulties. To alleviate the problems involved, they agreed to convey the Pearl River property to A-Second for the satisfaction of their mortgage indebtedness to A-Second, as well as the indebtedness in favor of Standard. To evidence this agreement the Edmonstons executed a dation en paiement conveying the property to A-Second. In turn A-Second declared the mortgage note of $7,200 in its favor satisfied, granting to the Edmonstons, at the same time, due acquittance and discharge of all indebtedness affecting the property. By this transaction, and by further agreements, A-Second assumed payment of the mortgage note held by Standard, agreeing to make all payments as they came due, and to maintain the life insurance policies in effect by premium payments. Although not objecting to the transfer of title to A-Second, Standard would not and did not release the Edmonstons from the effects of the mortgage obligation owed to Standard.
Lucien E. Edmonston was accidentally killed on March 28, 1967. According to the terms of the policy on his life, this event made the $16,000 double indemnity proceeds payable to his wife as beneficiary. On April 26, 1967 the balance due on Standard's mortgage loan was $14,512.87. At that time Standard prevailed upon Mrs. Edmonston to apply $14,512.87 of the $16,000 policy proceeds to the payment of the mortgage note which they held and to accept the balance of $1,487.13 in cash in full satisfaction of her claim as beneficiary. To manifest her agreement to this transaction, Mrs. Edmonston executed a document titled "Release of Claimant" on May 1, 1967 wherein she acknowledged receipt of the $16,000 due her as named beneficiary in the policy. From this amount she applied $14,512.87 to the satisfaction of the mortgage note in favor of Standard, and the mortgage and the note secured thereby were cancelled in full. A check for the $1,487.13 balance was issued to Mrs. Edmonston, duly endorsed by her and deposited to her account.
This suit followed on March 7, 1968 in which Mrs. Edmonston, as plaintiff, seeks judgment against Standard for $14,512.87, plus penalties, attorneys' fees, interest and costs. Alternatively, she prays for judgment in the same amount against A-Second and its successors C. A. Corporation and U.S. Thrift and Loan Corporation. Defendant A-Second and its successors (to whom we shall refer individually and collectively as A-Second) filed a third party petition against Standard for recovery of any amounts which they were adjudged to owe Mrs. Edmonston. Standard in turn third partied A-Second.
The trial court denied relief to Mrs. Edmonston. On appeal to the First Circuit the judgment was affirmed. La.App., 273 So.2d 707. We granted certiorari to review these judgments. La., 277 So.2d 440.

I.
Mrs. Edmonston's principal demand against Standard is based upon allegations that she was distressed by her husband's death and did not knowingly and voluntarily pay the balance due on the mortgage note held by Standard; hence, she alleges, Standard was not authorized by the policy assignment or otherwise to apply the proceeds to the satisfaction of the balance due on the mortgage note it held.
It is unnecessary in this connection to consider the enforceability of the policy assignment, for the record does not adequately support the contention that Mrs. Edmonston was unaware of her rights or obligatons at the time she agreed with Standard that the policy proceeds could be applied to *120 the satisfaction of the balance due on the mortgage note. We do not agree with her contention that she did not act freely and voluntarily. As already noted, she accepted the balance due and signed the "Release of Claimant" agreement. She had been furnished a full statement of the proposed disposition of the funds. In addition, she was knowledgeable, had some experience in affairs of this kind, and was fully aware of the fact that she and her husband had not been discharged from the obligation to Standard. She concedes she was aware of the fact that she was primarily liable on the note held by Standard despite the fact that A-Second had assumed its payment.
With this finding we dismiss Mrs. Edmonston's principal demand against Standard for return of the $14,512.87 paid on the balance due on the mortgage note.

II.
Mrs. Edmonston's alternative demand is, however, the central issue argued in briefs to this Court. The contention is that the trial court and Court of Appeal erred in not invoking and applying the actio de in rem verso to permit her to recover $14,512.87 against A-Second. This restitutionary remedy is founded upon principles of unjust enrichment embodied in Civil Code articles 21 and 1965.[1] The action derives from the maxim that natural justice requires that no one should be enriched at the expense of another. It is used to fill a gap in the law where no express remedy is provided. According to this position, A-Second was, in fact, relieved of the payment of that amount and thereby enriched to that extent while, at the same time, Mrs. Edmonston was impoverished by her discharge of an obligation which A-Second had assumed to pay on her behalf.
This Court set out the requirements to be met before the actio de in rem verso was applicable in Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). The case concerned an action by a subcontractor, as buyer of a faulty caulking compound, against the successor to the manufacturer of the compound for the amount the subcontractor was cast in judgment to pay to the contractor as damages incurred in recaulking made necessary by the faulty compound. This Court applied the actio de in rem verso to the subcontractor's claim for indemnity against the successor to the manufacturer, which it held was unjustly enriched by this payment.
To deter courts from turning to equity to remedy every unjust displacement of wealth with unregulated discretion, certain limitations are applicable to the actio de in rem verso. The Minyard decision set forth five prerequisites which must be satisfied to successfully invoke the action: 1) There must be an enrichment; 2) there must be an impoverishment; 3) there must be a connection between the enrichment and the impoverishment; 4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and 5) the action will only be allowed when there is no other remedy at law, i. e., the action is subsidiary or corrective in nature.

*121 1) Enrichment

There must be an enrichment.
A-Second by the dation en paiement executed on October 18, 1966 acquired the Edmonston house and lot for a recited consideration of $5,178.24the balance due on the Edmonston obligation to A-Secondand the assumption by A-Second of the balance due on the first mortgage to Standard in the sum of $14,512.87, a total $19,691.11 paid for a property valued by Standard's appraisers at $24,100. Thus, when Mrs. Edmonston discharged the $14,512.87 obligation to Standard, A-Second was relieved of the payment of that debt which it had assumed and therefore A-Second's patrimony was enriched to that extent.
There is no merit to A-Second's contention that it acquired the Edmonston property subject to the encumbrances and for that reason it was entitled to all benefits derived from the life policies since it paid the premiums. At the time of the dation, no contract was entered into which would entitle A-Second to the proceeds of the life insurance. There was, moreover, no legal requirement between Mrs. Edmonston and A-Second that Mrs. Edmonston discharge A-Second's obligation to pay the mortgage note due Standard. To the contrary, A-Second had, by the dation, given the Edmonstons full acquittance and discharge of all encumbrances affecting the property. That is to say, Mrs. Edmonston owed A-Second nothing, still A-Second was the beneficiary of $14,512.87 when Mrs. Edmonston paid the mortgage note held by Standard. Thereby A-Second received a benefit they had never bargained for, the discharge of its obligation to Standard. To that extent A-Second was unquestionably enriched and in our view the case falls within the meaning of enrichment as that term is contemplated by the actio de in rem verso.

2) Impoverishment

There must be an impoverishment.
The Court of Appeal was of the opinion that Mrs. Edmonston suffered no impoverishment. By paying the mortgage note held by Standard, on which she was personally liable, the court reasoned, Mrs. Edmonston was released from this debt to her benefit.
This point of view overlooks the fact that Mrs. Edmonston gave up her house and lot to A-Second in the dation en paiement to satisfy all debts bearing against the property. When she paid Standard, therefore, she was paying an obligation of A-Second. Actually, she paid the $14,512.87 twice: once in the dation en paiement by conveying her house to A-Second with the understanding that A-Second would pay that debt and again when she paid Standard. She was thus impoverished when her patrimony was diminished by the amount paid to Standard.

3) There must be a connection between the enrichment and the resulting impoverishment.

There was a causal connection between Mrs. Edmonston's impoverishment and A-Second's enrichment as our discussion demonstrates. When Mrs. Edmonston paid the balance due to Standard and the mortgage and note were cancelled, A-Second immediately became the beneficiary to the exact extent of the payment. Mrs. Edmonston's one act of payment therefore simultaneously enriched A-Second and impoverished her. Unless Mrs. Edmonston prevails here, A-Second gets a $24,100 home for $5,178.24 as a direct consequence of the payment. These facts meet the test which requires that "It must be clear that the defendant would not have been enriched unless the plaintiff has been impoverished." Guttridge and David, The Doctrine of Unjustified Enrichment, 5 Cambridge L.Jour. 204, 214 (1933-35).

*122 4) There must be an absence of "justification" or "cause" for the enrichment and the impoverishment.

"Cause" is not in this instance assigned the meaning commonly associated with contracts, but, rather, it means that the enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid juridical act between the impoverishee (Mrs. Edmonston) and the enrichee (A-Second) or between a third party (Standard) and the enrichee. A valid juridical act with the enrichee is essential to a finding of "cause". Nicholas, Unjustified Enrichment in the Civil Law and Louisiana Law, Part I, 36 Tul.L.Rev. 622 (1962).
The issue, then, is whether there is a contract, express or implied, between Mrs. Edmonston and A-Second or Standard and A-Second which would justify the enrichment of A-Second. If there is such, the contract is the law between them and it serves as a legal cause or justification for the enrichment. If cause is found, the enrichment is not unjustified and the attempt to invoke the actio de in rem verso must fail. For it is not every unjust enrichment which warrants the resort to equity; only the unjust enrichment for which there is no justification in law or contract allows equity a role in the adjudication.
A-Second argues that justification or cause does appear on the face of the policy assignment from the Edmonstons to Standard. But this does not suffice to satisfy the requirement. The French law requires an act between the impoverishee and the enrichee or the third party and the enrichee. This is the better test. See Nicholas, Id., at 625, 628, 631.
The contract of assignment relied upon by A-Second is an agreement between the Edmonstons and Standard, not with A-Second the enrichee. A-Second is neither mentioned nor contemplated in this contract. And the dation was the only juridical act between Mrs. Edmonston and A-Second even remotely associated with the facts at issue. The dation concerned the giving in payment of the Edmonston house and lot in satisfaction of A-Second's mortgage and the assumption by A-Second of the obligation to discharge the Standard mortgage and pay the policy premiums. No element of this agreement entitles A-Second to the policy proceeds utilized by Mrs. Edmonston to satisfy the Standard mortgage.
Moreover, the assignment by Mrs. Edmonston to Standard has no real bearing on the issues, for its validity is extremely questionable. Mrs. Edmonston is not permitted under this Court's jurisprudence to assign her beneficiary rights before they actually accrue, for at the time of the assignment Mr. Edmonston had the right, by the terms of the policy on his life, to change the beneficiary at any time. Dorset v. Thomas, 152 La. 60, 92 So. 734 (1922); Douglass v. Equitable Life Assur. Soc., 150 La. 519, 90 So. 834 (1922); 2A Appleman, Insurance Law and Practice, ¶¶ 1257, 1282 (1966).

5) The action will only be allowed where there is no other remedy at law, i. e., the action is subsidiary.

Civil Code Article 21 expressly states that the judge can turn to equity (actio de in rem verso) only where there is no express law. The action must not be allowed to defeat the purpose of a rule of law directed to the matter at issue. It must not "perpetrate a fraud on the law." Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).
There is no remedy available to Mrs. Edmonston other than the actio de in rem verso. She has, in effect, paid the debt of another and the actual benefit to A-Second cannot be questioned. Principles of negotiorum gestor are inapplicable, for *123 she had no intent to benefit A-Second. La.Civil Code arts. 2295-2300. There is no remedy by which she can recover the money paid to Standard for she was obligated to them. But she owed no obligation to A-Second, and there was no requirement in law or by contract, that she discharge A-Second's debt to Standard; and there is no contract or rule of law which permits Mrs. Edmonston to reclaim from A-Second the $14,512.87 enrichment resulting to A-Second by the payment of that amount to Standard.
It follows, therefore, that the action here is subsidiary in character; it will defeat no rule of law and equity will prevail by allowing Mrs. Edmonston to recover from A-Second.
And, since we are doing equity, A-Second will be allowed a credit for insurance premiums paid on the life policies. Douglass v. Equitable Life Assur. Soc., 150 La. 519, 90 So. 834 (1922).
For the reasons assigned the judgments of the trial court and Court of Appeal are reversed, and judgment is rendered in favor of Grace Q. Edmonston and against A-Second Mortgage Company of Slidell, Inc., C. A. Corporation, and U.S. Thrift and Loan Corporation, individually, jointly and in solido, in the amount of $14,512.87, plus legal interest from the date of judicial demand until paid, and for all costs of these proceedings, less a credit of $321.70, the amount paid on policy premiums, with legal interest thereon from date of judicial demand.
All other demands of plaintiff, and all third party demands asserted herein are denied.
CULPEPPER, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct.
DIXON, J., dissents.
NOTES
[1] La.Civil Code art. 21:

"In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent."
La.Civil Code art. 1965:
"The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."
See also La.Civil Code articles 501, 507, 1793, 2147, 2301, 2302, 3407 for examples of legislation based on principles of unjust enrichment.