413 So.2d 248 (1982)
Athanasios LASPOPOULOS
v.
Marjorie Lee Nobles, wife of Camile CHAISSON, et al.
No. 12865.
Court of Appeal of Louisiana, Fourth Circuit.
April 7, 1982.
Rehearings Denied May 19, 1982.
Don C. Gardner, Middleberg, Riddle & Person, Metairie, for defendant-appellee.
Leopold Stahl, New Orleans, for plaintiff-appellant.
*249 John H. Hammel, Jr., New Orleans, for defendant-appellant.
Before GULOTTA, CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
The facts of this case are essentially as follows. Defendant-appellee Marjorie Lee Nobles, wife of Camile Chaisson (hereinafter referred to as Nobles) purchased 3608 Chartres Street sometime in 1963. On March 24, 1974 she refinanced the subject property through French Market Homestead Association, and borrowed $22,400.00. At that time the property was appraised at $28,000.00. On April 9, 1979, a fire caused approximately $13,000.00 worth of damages to the property, and in the first week of July, 1979, Nobles received a check from Maryland Casualty, her insurer, for $13,750.08. The check was made payable to Nobles and French Market, jointly.
Sometime after the fire and prior to October 12, 1979, Anthanasios Laspopoulos, plaintiff-appellant, negotiated with Nobles for the purchase of the subject property. Appellant was fully aware of the damaged condition of the property as his office was immediately adjacent to the property, and he attempted to put out the fire prior to the fire department's arrival. Finally both defendant-seller and plaintiff-purchaser agreed on the terms of $5,000.00 cash, plus assumption of the homestead mortgage which had a balance of $21,244.76. This agreement was reduced to writing, and on October 12, 1979 the parties executed a standard real estate purchase agreement.[1] On the same day, appellant brought the agreement to French Market for approval of the assumption. On November 15, 1979, the parties executed the sale and assumption as per the terms of the purchase agreement. The homestead increased the interest rate to 8¾%, and appellant was required to pay a 1% fee, plus all closing costs. After the closing both appellant and Nobles went to the homestead for the purpose of Nobles obtaining payment of her escrow account. At the same time, she presented the insurance draft to the homestead for endorsement, and they refused to do so. At that point, appellant advised the homestead that the funds should belong to him. However, Nobles also claimed the funds stating she would have never sold the property for such a low price if she had to give the homestead the funds. The homestead claimed the funds alleging that as a loss payee, the funds should be used to reduce the mortgage. Hence Laspopoulos filed suit against Nobles and French Market Homestead claiming ownership of the funds. The homestead filed a third party demand also seeking ownership of the funds. Judge Plotkin, in extremely well written reasons, granted judgment in favor of Nobles, and Laspopoulos and French Market have perfected this appeal.
The purchase agreement executed by both parties is silent as to the disposition of the insurance proceeds. Appellant claims it was his understanding that he was to receive the benefit of those funds, i.e. the repair of the subject property. Yet, his testimony indicates that he had more than ordinary knowledge of real estate transactions. He had purchased several other properties through French Market Homestead on numerous occasions, and was fully aware of the terms and conditions of a purchase agreement. Although he testified that he could neither read nor write the English language, the trial court concluded he comprehended English perfectly. He further testified that Mr. Leon Salloum, the person who prepared the purchase agreement, read the entire document to him prior to his executing same. Appellant did not object or raise any question at that time about the application of the insurance proceeds.
Parol evidence will not be admitted to alter, vary or add to the terms of a written agreement. La.C.C.Art. 2276. *250 However, it can be used to clarify any ambiguity, to complete an obviously incomplete instrument or to show fraud, illegality, mistake, or failure of consideration. Mott v. Phillips, 372 So.2d 223 (La.App. 3rd Cir. 1979) A review of the purchase agreement convinces this Court that its terms are clear and concise and therefore speaks for itself. No mention is made of the insurance proceeds, and therefore we conclude that there was no intention to transfer same to the appellant.
Further, the trial court accepted the appraisal of Mr. M. J. Mayeur who testified that the property had a cost value of $22,150.00 and a market value of $22,500.00.[2] If appellant would have received the insurance proceeds of $13,750.00, he would have actually only paid $12,494.76 for the property, some $10,000.00 less than the market value. Nobles testified emphatically that she would have never sold the property for that price. The purchase price of $26,244.76 is not unreasonable especially in view of appellant's testimony that he needed additional space to add to his present offices. The trial judge concluded that "the evidence is overwhelming that the plaintiff intended to purchase the property in a `as is' condition...."
French Market Homestead argues that as the mortgagee it is the rightful owner of the insurance proceeds. It claims that it is the loss payee under the terms of the policy, and therefore the funds should have been applied to the outstanding balance of the Nobles loan. Although the policy itself was not introduced into evidence, on the hearing for a new trial the lower court concluded that circumstantial evidence indicates that the homestead was a loss payee under the policy.[3] However, the court still refused to award the proceeds to the homestead for the following reasons:
1. The homestead was negligent in its failure to examine, inspect or appraise the property prior to the sale.
2. The homestead's collateral was not impaired at the time of the loss.
3. The homestead and Laspopoulos would be unjustly enriched.
We agree with the trial court in this regard, particularly on the unjust enrichment theory. Nobles negotiated her selling price on the premise that she would be able to retain the insurance proceeds. Laspopoulos agreed to purchase the property at a fixed price, without any mention being made in the agreement about the insurance proceeds. French Market Homestead consented to the assumption without reviewing the collateral, but was satisfied with an increase in interest rates. Certainly, their security has not been impaired. Under the facts of this case, awarding the insurance proceeds to French Market Homestead would unjustly enrich both the homestead and appellant. The trial court's reasoning in this regard is very explicit, and we adopt them as our own.
"In Louisiana, the doctrine of `unjust enrichment' is based upon Louisiana Civil Code Articles 21 and 1965. The Louisiana Supreme Court in Edmonston v. A-Second Mortgage Co., 289 So.2d 116 (La. 1974) set forth the requirements necessary for the actio de in rem verso to be applicable.
There are five prerequisites which must be met to successfully invoke the action:
1. There must be an enrichment.
2. There must be an impoverishment.
3. There must be a connection between the enrichment and the impoverishment.
4. There must be an absence of justification for the enrichment and impoverishment; and

*251 5. There must be no other remedy at law, that is, the action is corrective or subsidiary in nature. See Edmonston, supra, and Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).
The Court finds all elements are present, entitling Defendant, Nobles, to a judgment based upon this theory.
1. Enrichment. Plaintiff, Laspopoulos, would receive a benefit for which he had never bargained. By operation of law, if the proceeds were turned over to the Homestead, the money would be used by the Homestead to reduce the Plaintiff's mortgage debt, that is, it would result in a discharge of a portion of Plaintiff's obligation to the French Market Homestead.
2. Impoverishment. At the time of the fire Defendant, Nobles, also a party to the insurance contract, acquired a vested interest in the insurance proceeds. By law, these proceeds would have been used at that time to reduce her obligation to the Homestead. If the proceeds are now turned over to the Homestead, the result to Nobles would be in effect that she would pay twice a portion of her obligation to the Homestead. Her obligation was paid the first time in the Act of Sale of the property to Laspopoulos, in which she gave up the property in exchange for $5,000.00 plus Plaintiff's assumption of the mortgage; the second time would occur if she was now required by this Court to turn over the proceeds to the Homestead, proceeds in which she had a vested interest from the time of the fire, and proceeds which would be used by the Homestead to reduce the mortgage on the property.
3. There must be a connection between the enrichment and the resulting impoverishment. There would be a causal connection between Nobles' impoverishment and Laspopoulos' enrichment. When Nobles, in effect, would pay this portion of the mortgage debt the second time, Laspopoulos would be enriched thereby, as his obligation on the mortgage debt would be reduced by the amount turned over.
4. There must be an absence of `justification' for the enrichment. The issue here is whether there was a contract, expressed or implied, between Nobles and Laspopoulos, or between the Homestead and Laspopoulos, i.e., an act, that would justify the enrichment, between the impoverishee and the enrichee or the third party and the enrichee. (See Edmonston, supra, at p. 122). There is no contract, expressed or implied, between the above respective parties that would entitle Laspopoulos to the insurance proceeds that would, in effect, be paid by Nobles to satisfy Laspopoulos' mortgage debt to the Homestead.
5. The action will only be allowed where there is no other remedy at law. This action is allowed only when there is no express law and may not be used to `perpetuate a fraud on the law'. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). Mrs. Nobles has no other remedy other than the actio de in rem verso which would permit her to reclaim the $13,705.08 enrichment that would result to Laspopoulos."
For the reasons assigned herein, we affirm the judgment below.
AFFIRMED.
NOTES
[1] Although the agreement was executed by both parties on October 12, 1979, they did not sign at the same time.
[2] Admittedly the appraisal was done after certain repairs had been done, however Mr. Mayeur testified that the property was still not in a livable condition. Further he placed a value of $10,800.00 on the bare land. The trial court accepted the appraisal, and we see no manifest error in this regard.
[3] This court takes note of the fact that if the policy had been introduced into evidence, presumably containing the "loss payee" provision, it would have been unnecessary for the trial court to rely on circumstantial evidence.