DUFRESNE, Judge.
This matter came before the district court in a concursus proceeding to determine the rightful claimant to $2,205, or 3% of the sale price of a house. These funds were in the possession of plaintiff in con-cursus, Robert Creely, the attorney who passed the sale. The two claimants made defendants, were Leisure Living, Inc., seller of the house, and Jessie Martin Realty Mart, Inc., a real estate broker. After trial on the merits, the court held that no contract existed between the claimants at the time this dispute arose. He further found, however, that Realty Mart, appellee here, was entitled to $1,500 in quantum meruit for services rendered. It is from this judgment that Leisure Living, Inc., appellant, takes this appeal.
Because we find no rule of equity that permits Realty Mart to recover in quantum meruit, and no contractual obligation on the part of Leisure to pay them a realtor’s commission, we reverse in part and affirm in part.
On October 24,1979, Realty Mart entered into a sale-purchase agreement for a home in Nottingham Subdivision with Leisure, owner of the house, and Alfred Gaudet, purchaser. By the terms of that agreement, Leisure agreed to pay Realty Mart a 3% commission on the proposed sale price. The contract specified, however, that if a loan commitment were not secured within 75 days after October 24, i.e., January 8, 1980, that the contract would be null and void.
This contract being concluded by the parties, Realty Mart advised Gaudet on how to go about getting a loan. Following this advice, Gaudet duly made application with Carruth Mortgage Corporation on the basis of the contract. Sometime in late January, Carruth sent the application papers to Creely for finalization. On inspecting these papers, Creely noticed that the October 24th sale-purchase contract had apparently expired, and decided that it would have to be rectified or replaced by another agreement before the loan could be finalized.
As a result of discussions, with all of the parties, a second sale-purchase agreement between only Leisure and Gaudet was entered into on February 1, 1980. On February 11, 1980, Gaudet received from Carruth a commitment for the requested loan. This was the only loan commitment made to Gaudet in regard to the contracts at issue here. It was stipulated at trial, however, that the loan commitment was made on the basis of the October 24, contract and accompanying loan application.
The final sale of the home was concluded on March 18, 1980. At that time, Creely anticipated that Realty Mart would make a claim for broker’s fees. He therefore withheld the amount of these fees, i.e., $2,205, from Leisure, and instituted this concursus.
After trial on the merits, the trial judge concluded that at least as of January 30, 1980, two days before the second sale-purchase agreement was signed, no viable agreement or contract existed between Leisure, Realty Mart and Gaudet. However, based on services rendered by Realty Mart, he awarded them $1,500 in quantum meruit.
The first issue to be resolved here is whether a party to a contract which is null and void for failure of a suspensive condition is entitled to recover in quantum meru-it for services rendered under that contract before the suspensive condition failed. We conclude that a party so situated is not entitled to recover, and therefore we reverse the judgment of the district court as to the award in quantum meruit.
The contract at issue here was prepared by Realty Mart, and contains an unambiguous suspensive condition:
“Should purchaser, seller or agent be unable to obtain the loan [of $48,500] within 75 days from acceptance hereof, this contract shall be null and void .... Commitment by lender to make loan, subject to *1227 approval of title shall constitute - obtaining of loan.”
The contract further provides that:
“If this offer is accepted, seller agrees to pay the agent’s commission of 3% which commission is earned by agent when this agreement is signed by both parties and when the mortgage loan, if any, has been secured.”
The contract was signed on October 24, 1979. The loan commitment thus had to be obtained by January 8,1980, or the contract would be null and void of its own force. As the loan commitment was not forthcoming until February 11, 1980, the contract was null and void as of January 8th, and no realtor’s commission could be owing under the terms of this void agreement. With this conclusion, the trial judge was in agreement.
He further found, however, that there was a “relationship” between Realty Mart and Leisure, and held that this relationship entitled Realty Mart to compensation in quantum meruit. This holding is erroneous.
Quantum Meruit is an equitable doctrine, based on the concept that no one should be unjustly enriched at the expense of another. Swiftships, Inc. v. Burdin, 338 So.2d 1193 (La.App.3rd Cir.1976). In the instant case, there are only two legal theories based in equity that can be advanced, and both bar recovery by Realty Mart in quantum meru-it.
The first is that under La.C.C. art. 1963, equity can be resorted to when the intent of the parties is not evident or is unlawful. Realty Mart has not alleged that the October 24th contract was ambiguous or that the intent of the parties was not evident, and we find no ambiguity or lack of clear intent in that agreement. Neither can there be any argument that the suspen-sive condition was unlawful because La.C.C. arts. 2020-2047 permit such agreements. As Realty Mart has failed to demonstrate that either of these requisites existed, La. C.C. art. 1963 prohibits resort to quantum meruit, or equity, in this case.
The second theory for recovery here is in fact a more general application of the first. This theory is based on quasi-contract, or more properly in this case, on principles of unjust enrichment. While the Civil Code recognizes only two types of quasi-contract, i.e., transaction of another’s business and payment of a thing not due (La.C.C. Art. 2294), the jurisprudence has established that other forms of quasi-contracts can arise under the more basic principle of unjust enrichment. Moreover, because the Code makes no specific provisions for cases in quasi-contract other than as contained in Art. 2294, such cases must be decided according to equity as provided in La.C.C. Art. 21. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). However, to obtain relief in the action for unjust enrichment, or actio de in rem verso, five criteria must be met:
(1) there must be an enrichment,
(2) there must be an impoverishment,
(3) there must be a connection between the enrichment and resulting impoverishment,
(4) there must be an absence of justification or cause for the enrichment and impoverishment, and
(5) there must be no other remedy at law available to plaintiff.
Minyard v. Curtis Products, Inc., supra.
While four of these criteria have apparently been met in the present case, there remains the question of whether there was any justification or cause for the enrichment. Put another way, the issue here is whether the enrichment resulted from a rule of the contract entered into by the parties. Edmonston v. A-Second Mortgage Co., 289 So.2d 116, 122 (La.1974).
On the facts before us, we can only conclude that there was justification for the enrichment under the terms of the contract. Indeed, the only cause of this enrichment was that Realty Mart drew up and entered into a contract based on the occurrence of a future event and that event failed to occur. Because there was justification for the enrichment, Realty Mart thus cannot recover in the actio de in rem verso.
*1228 Realty Mart also contends that they are entitled to the entire broker’s fee of 3% under the contract. They rely on Sleet v. Gray, 351 So.2d 286 (La.App. 3rd Cir.1977) for the proposition that where the contract states first that the sale is to be concluded by a certain date, and second that the broker’s fee is owing at the conclusion of the sale, that the later clause remains effective even though the sale is not concluded until after the date specified. We note, however, that the reported case makes no mention of whether the contract at issue there provided that if the sale were not passed by the stipulated date that the agreement would be null and void. Here the agreement does contain an explicit provision stating that failure to obtain a timely loan commitment nullifies and voids the contract. We cannot give force to any provision in that contract once it is extinguished by its own terms.
Realty Mart relies on Sleet, supra, for the further proposition that a realtor is entitled to his commission even when the sale is completed after termination of the agency contract, so long as he was the procuring cause of the sale. We again distinguish that case because there the buyer had refused to conclude the sale within the stipulated time of the contract. The court reasoned that to deny the broker his commission under such circumstances would be to allow all future buyers and sellers to defeat realtors’ fees by mere procrastination in closing sales.
While we agree with the result reached by our brethren in the Third Circuit, the proper rule of that case should have been that when a party prevents the occurrence of a suspensive condition, that condition is considered as waived. Kraft v. Baker, 377 So.2d 871 (La.App. 4th Cir.1979).
Here, there was no action or inaction on the part of buyer or seller which delayed the loan commitment. Proper application was made by Gaudet and through no fault of his own the loan commitment was not secured before the contract expired. Under these circumstances, no waiver of the condition occurred, and the contract was void for failure of that condition.
Realty Mart argues to the contrary that Leisure and Gaudet agreed to allow the contract to expire, and thus waived the condition. There is no evidence to support this contention. The evidence is rather that Leisure and Gaudet did not enter into any negotiations for direct sale of the property until sometime after January 19, well after the expiration day of January 8. For reasons which are not clear in the record, the trial court mistakenly attached some significance to the date of January 30, 1980. That date is mentioned in the contract only as the final day for passing the sale. However, the whole contract expired on failure to secure a loan commitment as of January 8. As Realty Mart presented no evidence to show that Leisure and Gaudet agreed before January 8, to delay the sale, no waiver of the condition could thereby have occurred.
The final argument of Realty Mart is that a prior listing agreement between themselves and Leisure for five other specified properties in Nottingham Subdivision was somehow extended by the sale of five additional unlisted houses in that development. They contend that because they were paid a 3% commission on the sales of the unlisted houses, and because the listing agreement for the five enumerated houses specified a 3% commission, that the listing agreement was thereby extended by implication to the five unlisted houses, as well as to the house at issue here. As the listing agreement would have entitled them to a commission under the facts of the present sale, they conclude that they are entitled to the entire $2,205 in dispute.
While we recognize that an oral listing agreement is binding, Samuels v. Firestone, 342 So.2d 661 (La.1977) there was simply no showing at trial that the parties ever orally agreed to extend the listing agreement to all sales beyond the five houses enumerated in that agreement.
We therefore affirm the finding of the trial judge that no contractual relationship existed under either the prior listing agreement or the October 24 sale-purchase agree *1229 ment, and that Realty Mart is not entitled to a commission on this sale. However, as there was no legal basis for recovery in quantum meruit, we reverse the trial court’s award of $1,500 to Realty Mart, and order that the entire amount of $2,205 originally placed in the court’s registry be awarded to Leisure Living, Inc. We finally note that because no contract existed between the parties at the time this dispute arose, all claims for attorney’s fees and damages based on contract, active breach of contract or breach of judiciary duty under contract are moot.
For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part.

AFFIRMED IN PART.

REVERSED IN PART.