hTHIBODEAUX, Judge.
Miriam and Gervis Arnold appeal from the trial court’s judgment that a purchase agreement between themselves and Catherine Simon is unenforceable and that the Arnolds are not entitled to reimbursement of amounts paid over seven years toward the purchase of Simon’s property. We find that the purchase agreement has expired and is unenforceable, but that the trial court’s conclusion regarding the reimbursement is not supported by the evidence. For the following reasons, we ¡¡affirm in part and reverse in part the judgment and award Miriam and Gervis Arnold $11,752.17.
I.

ISSUES

We must decide:
1) whether the agreement between the parties constituted a completed exchange of property or an agreement to sell in the future with an unmet suspen-sive condition;
2) whether reimbursement is due Mr. & Mrs. Arnold for the payments made on the Simon property over a seven-year period; and,
3) whether the trial court abused its discretion in assessing Mr. & Mrs. Arnold with 75% of the cost of court proceedings.
II.

FACTS

On July 12, 1990, Miriam and Gervis Arnold entered into a contract with Catherine Simon to exchange and purchase the primary residences of one another. The contract called for án immediate exchange of occupancy, and it anticipated legal closings and exchanges of title within twelve months. The Arnolds owned a mobile home and lot, unencumbered by mortgage, which they valued at $18,000.00. Catherine Simon owned a house and lot valued by Simon at $48,224.01 and encumbered with a mortgage balance of $30,-224.01.
The contract, entitled “Contract To Buy And Sell,” stated that the Arnolds agreed to sell their property to Simon for $18,000.00, and that Simon agreed to sell her property to the Arnolds for $18,000.00 plus an assumption of the existing mortgage. The contract stated that if the mortgage was “non-assumable,” then the ^Arnolds agreed to “pay off the said mortgage in full at time of purchase.” The contract further stated that no cash was to physically change hands between the parties, and that the “sales” of the two properties “shall be in the nature of an exchange of properties.” The contract provided that the Arnolds “shall pay the monthly notes to LSA [mortgagee] until the Simon residence is transferred to Arnold.”
The Arnold residence was unencumbered by a mortgage. No arrangements were made to collect rent from Simon during the twelve-month interim between occupancy and ownership. In fact, one of Simon’s motives in entering into this arrangement was to avoid a monthly housing expense as she was financially unable to pay her own house notes. The parties moved into each others’ homes in July of 1990, and the Arnolds began paying the house notes of Simon. The record indicates that the monthly note paid by the Arnolds on the Simon property was $405.00 per month. At the end of the twelvemonth period envisioned in the contract, the legal transfer of property did not take place. However, Simon continued to live free in the Arnolds’ mobile home, and the Arnolds continued to live in the Simon house, paying the monthly notes to the mortgagee as agreed. This arrangement continued for six more years.
From July of 1990 until August of 1997, the Arnolds paid notes on the Simon property totaling $33,801.75. There was also testimony that the Arnolds put in central air and heat for $1,518.40 and installed siding for *701 $3,064.00, in addition to normal maintenance and repairs. During her occupancy of the Arnold property, Catherine Simon put flooring in the mobile home and performed other maintenance and repairs. During the last year of their occupancy of the Simon property, the Arnolds experienced some difficulty paying the mortgage notes timely, and had to hpay several late charges. Simon hired an attorney and demanded that the Arnolds vacate, expressing her intention to reclaim the property. In attempting to force an early eviction of the Arnolds, Simon cut off their utilities, causing them to lose frozen food. Embarrassed and humiliated, the Arnolds moved from the Simon premises. Simon subsequently filed this suit seeking a declaratory judgment ■ regarding the rights of the respective parties.
The Arnolds answered and reconvened against Simon. Asserting that the initial contract was ratified and extended by the actions of the parties, the Arnolds sought mental anguish damages and attorney’s fees for wrongful eviction, and asked the court to enforce the contract to buy and sell. In the alternative, the Arnolds asked the court to award them seven years of fair market rental value for Simon’s occupancy of their property, and reimbursement of the total.amount of improvements and mortgage payments they made on the Simon property. The trial court declared that the contract contained a sus-pensive condition that was not met and that the contract had expired and was unenforceable. It further found that the Arnolds were not entitled to rental payments from Simon or to reimbursement of the mortgage payments or improvements they made on the Simon property. The Arnolds appeal.
III.

LAW AND DISCUSSION

Standard of Review
Although deference to the fact finder should be accorded, the court of appeal nonetheless has a constitutional duty to review facts. Because of this constitutional function, it has every right to determine whether the trial court’s resolution was clearly wrong based upon the evidence, or clearly without evidentiary support. La. Const, art. V, §§ 5(C), 10(B); Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94); 639 So.2d 216. The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s findings. It must view the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
The Agreement
The Arnolds wish to categorize the contract at issue as a contract of exchange which was completed when the parties delivered their properties over to each other for occupancy. Exchange is defined in Article 2660 of the Louisiana Civil Code as follows:
Art. 2660. Exchange, definition
Exchange is a contract, by which the parties to the contract give to one another, one thing for another, whatever it be, except money; for in that case it would be a sale.
In the present case, the contract, entitled “Contract To Buy And Sell,” does state that no money will change hands and that the “sale” will be in the form of an “exchange” of property. However, the contract also provides that Simon agrees “to sell” her property to Arnold for $18,000.00 in “cash” and an assumption of her mortgage balance in the amount of $30,224.01, and it provides that the Arnolds agree “to sell” their property to Simon for $18,000.00 in “cash.” A “sale” is defined in Article 2439 of the Louisiana Civil Code as follows:
Art. 2439. Definition
Sale is a contract whereby a person transfers ownership of a thing to another for a price in money.
The thing, the price, and the consent of the parties are requirements for the perfection of a sale.
bSmce the principal object of the agreement in this case is a transfer and exchange of property with additional consideration of a $30,224.01 mortgage balance to be assumed, it appears to contain elements of *702 both an exchange and a sale. See Dunham v. Dunham, 467 So.2d 555 (La.App. 1 Cir.), writ denied, 469 So.2d 989, writ denied, 469 So.2d 990 (La.1985). Moreover, a true exchange is the legal equivalent of a sale. Womack v. Sternberg, 247 La. 566, 172 So.2d 683 (La.1965). The Civil Code provides in Article 2667 that except in cases of lesion, the rules governing sales also apply to exchanges:
Art. 2667. Application of general rules of sale
All the other provisions relative to the contract of sale apply to the contract of exchange.
And in this last contract each of the parties is individually considered both as vendor and vendee.
As to the sale or exchange of an immovable, the Code provides:
Art. 1839. Transfer of immovable property
A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.
In the present case, under the specific facts, evidence and circumstances provided, we find that the distinctions between an exchange and a sale are of no significance. If an exchange was intended, the record reflects that the agreement of exchange between the parties was never completed. An exchange of occupancy was completed when the Arnolds and Simon moved into the respective homes of one another. However, the exchange of titles and full ownership, also anticipated by the contract, never took place. If viewed as a contract to sell, the suspensive condition of assuming the mortgage balance or refinancing the loan, such that the respective ^properties could be deeded over, was never met. Hence, the transaction was never completed. The contract provided in paragraph seven:
7.
Arnold and Simon further agree that this contract shall be for a period of 12 months from the date hereof, and each shall purchase and sell their properties to each other at any time during the period of this contract, but not later than the 12 month period.
Accordingly, the written agreement to perform the final transfer of properties expired on July 12, 1991, so that neither party is bound by the writing to complete the sale. As to the Arnolds’ assertions that the parties communicated from time to time and by their actions agreed'to continue the arrangement such that delivery resulted in a completed exchange, neither party admitted to a completed transfer of property when interrogated under oath pursuant to Article 1839 above. Therefore, the full transfer of immovable property never occurred.
This does not, however, dispose of the unfair result of the actions of the parties. In anticipation of an eventual transfer of title, the Arnolds paid consideration toward the purchase of the home by handing over their property worth $18,000.00 to Simon, in the form of a down payment, and by assuming the payment of Simon’s notes, if not officially and legally assuming her mortgage. The Arnolds believed and effectively upheld the provision in the contract which stated that the Arnolds “shall pay the monthly notes to LSA until the Simon residence is transferred to Arnold.” Mrs. Arnold testified that even though the loan could not be assumed as planned, they believed that they were purchasing the. property by continuing to pay the notes until such time as legal arrangements could be made to transfer the property. . It should be noted that the notes paid by the Arnolds also contained an escrow for fire insurance on the Simon property.
^Catherine Simon did not push the Arnolds to refinance the Simon mortgage, and she continued to send payment books and all correspondence from her lender to the Ar-nolds. Simon continued to live on the Arnold property as if she owned it, free and clear, and she performed maintenance and repairs and made improvements to the property as if it were her own. However, due to the parties failure to consummate the sale, the maintenance performed by Simon on the Arnold property was the only consideration she paid. *703 The Arnolds, on the other hand, paid extensive consideration toward their purchase of the Simon property. They alleged expenditures of almost $40,000.00 in cash in the form of improvements and mortgage payments which directly benefitted Catherine Simon who would have had to pay those amounts to remain in her house for those seven years. The end result was that the Arnolds impoverished themselves by almost $40,000.00. Catherine Simon had the benefit of effectively saving almost $40,000.00 in cash and was returned to a house with a significantly lower mortgage balance than before. Consequently, Catherine Simon has been unjustly enriched by the Arnolds. We must now determine an equitable remedy in the absence of a completed transfer of ownership.
Unjust Enrichment
The Louisiana legislature in 1995 codified the doctrine of unjust enrichment in Louisiana Civil Code Article 2298. The article provides as follows:
Art. 2298. Enrichment without cause; compensation
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term “without cause” is used in this context to exclude eases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
bThe amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.
The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.
Over twenty years before this codification of the doctrine, the theory underlying the remedy of unjust enrichment was explained by the Louisiana Supreme Court in Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116, 120 (La.1974):
This restitutionary remedy is founded upon principles of unjust enrichment embodied in Civil Code articles 21 and 1965. The action derives from the maxim that natural justice requires that no one should be enriched at the expense of another. It is used to fill a gap in the law where no express remedy is provided.
The court in Edmonston cited its previous decision in Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (La.1967), setting forth five requirements that a plaintiff must meet in order to- prevail in an action for unjust enrichment:
To deter courts from turning to equity to remedy every unjust displacement of wealth with unregulated discretion, cei-tain limitations are applicable to the actio de in rem v.erso ....
1) There must be an enrichment;
2) There must be an impoverishment;
3) There must be a connection between the enrichment and the impoverishment;
4) There must be an absence of “justification” or “cause” for the enrichment and impoverishment; and,
5) The action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature.

Id.

ImUnder the first and second criteria, the record clearly indicates that Catherine Simon was enriched by the $33,801.75 in mortgage notes paid in her name to her mortgagee, and it is' clear that the Arnolds were impoverished' by that amount as those funds came directly from their pockets instead of being invested or saved. In addition to unburdening Catherine Simon and freeing her from mortgage payments over the seven-year period, the payments made by the Ar-nolds paid the fire insurance and reduced the principal balance on the Simon mortgage significantly. Additionally, the record indicates that the Arnolds spent from $4,500.00 to $6,000.00 on improvements to the Simon property, which included the installation of vinyl siding and a new central air and heat unit.
*704 The Arnolds funds were, therefore, depleted by the above amounts. When they moved from the Simon premises, they had nothing to show for those expenditures, as all benefits to the Simon property merely bene-fitted the estate of Catherine Simon. The trial court found that the Arnolds and Simon benefitted equally from the arrangement, but the court was manifestly erroneous in that finding. The Arnolds moved from the home they had completely paid off and into property burdened by a mortgage because they thought they were purchasing that property. After seven years and almost $40,000.00 in expenditures, they came away without the object of the agreement.
Simon moved from property burdened by mortgage payments she could not afford and into unencumbered property, enjoying a rent-free, note-free existence for seven years at the expense of the Arnolds. Simon was not even required to pay a lot rental in order to reside in the mobile home, as the Simons owned their land free and clear. After seven years of not paying mortgage notes of $33,-801.75, Simon came back into possession of improved property with a reduced mortgage balance, from $30,224.01 to $23,054.24, resulting in increased equity of $7,169.77. Hence, lnthe first and second criteria, calling for an enrichment by one and an impoverishment by the other, are met.
As to the third criterion, there is clearly a connection between the enrichment and the impoverishment as one directly resulted in the other. Funds of nearly $40,000.00 flowed directly from the Arnolds’ personal estate in the form of cash payments and into the estate of Catherine Simon. The fourth criterion is met as well. We can think of no justification or cause for the resulting enrichment or impoverishment as no lawful contract or provision of law was intended to permit the enrichment or to prevent the impoverishment. The parties entered into an agreement intended to benefit both families, and they continued to act as if the agreement was still valid long after the dates shown on the agreement. At some point an unjustified advantage was taken by one party that impoverished the other. ' Only one family bene-fitted. That unfair advantage must be corrected.
The last criterion requires that there be no other remedy at law available to the Arnolds to correct their impoverishment and Simon’s enrichment, except the application of a remedy in equity by this court. We find that those circumstances do exist in this case. Here, the elements of an exchange and the elements of a sale were set forth, and a large consideration was paid by the Arnolds toward the purchase of Simon’s property. However, they did this over a seven-year period without benefit of contract for six of those years as their purchase contract expired after one year and before all conditions of the exehange/sale were met. Hence, there is no valid contract or legal remedy to enforce.
This court has held that in calculating quantum meruit remedies based upon unjust enrichment, the party who establishes his right to compensation should recover “a reasonable amount to which he is entitled.” Brankline v. Capuano, 94-1630, p. 6 (La.App. 3 Cir. 5/3/95); 656 So.2d 1, 5. Paragraph two of La.Civ.Code hart. 2298 on unjust enrichment provides that the amount of compensation due is measured by the extent of the enrichment or the impoverishment, whichever is less. . In the present case, of the $6,000.00 in improvements alleged by the Arnolds, to- the Simon property, the parties jointly stipulated to $3,064.00 spent on siding and $1,518.40 spent on central air conditioning. Accordingly, we find that this stipulated amount of $4,582.40 should be reimbursed to the Arnolds. We further find that the $7,169.77 principal balance reduction on the mortgage should be reimbursed to the Ar-nolds.
The Arnolds are, therefore, entitled to reimbursement totaling $11,752.17. This represents the amount of increased equity which enriched Catherine Simon in the form of improvements and principal balance reduction, and is the lesser of the impoverishment-enrichment figures reimbursable under La. Civ.Code art. 2298. Interest on that amount is calculated from the date of judgment. Bieber-Guillory, d/b/a Designs v. Aswell, 98-559 (La.App. 3 Cir. 12/30/98); 723 So.2d *705 1145; Dixie Mach. Welding & Metal Works, Inc. v. Gulf States Marine Technical Bureau, Inc., 96-869 (La.App. 5 Cir. 3/12/97); 692 So.2d 1167. Accordingly, we reverse the trial court’s judgment and award the Arnolds the amount of $11,752.17 as an equitable remedy under La.Civ.Code art. 2298.
Assessment of Costs
The Arnolds have also assigned as error the trial court’s judgment which assessed them with 75% of the costs in this matter. This assignment of error was not briefed and is considered abandoned. Rule 2-12.4 of the Uniform Rules — Courts of Appeal.
J3IV.

CONCLUSION

The trial court correctly determined that the contract had expired and was unenforceable. However, we find that the Arnolds innocently made improvements and reduced the mortgage balance of Catherine Simon for seven years, unjustly enriching her in the amount of $11,752.17, while believing that they were purchasing a new home. Accordingly, Simon is ordered to reimburse that amount to the Arnolds, with interest from the date of this judgment.
We affirm also the assessment of costs at the trial court level. Costs at the appellate level are assessed to Catherine Simon.
AFFIRMED IN PART AND REVERSED IN PART AND RENDERED.