## BERNARD v. AUGUSTE.

Action to rescind, on the ground of simulation, a sale made to defendant by one F., as agent of the plaintiff. It was proved that the property in contest belonged to F., who was an insolvent, but had been purchased in the name of the plaintiff, his concubine, for the purpose of screening it from his creditors; that at the time of the purchase plaintiff had no means of her own; that F. acted as her attorney in fact; and that, suspecting the fidelity of the plaintiff, he made, as agent of the latter, a simulated sale to the defendant. *Per Curiam:* No issue can be formed in relation to such frauds and simulations, between the parties implicated in them, which a court of justice ought to try. Petition dismissed.

APPEAL from the Parish Court of New Orleans, *Maurian*, J.
    The judgment of the court was pronounced by

ROST, J.  The parties to this suit are all persons of color.  The evidence discloses it to be a contest between the adulterous concubine of a fraudulent bankrupt and his confidential friend, for property which he has so far succeeded in withholding from his creditors.

"*Procul, O procul este, profani!*  The temple of the justice of your country is the house of God, it should not be made a den of thieves."  These were the words used by the venerable presiding judge of the late Supreme Court, in a case bad indeed, but not tainted, like this, with every species of corruption. *Mulhollan* v. *Voorhies*, 3 Mart. N. S. 46.

With these words we had stopped the counsel, at an early stage of the argument, but for the hope that the cause of justice might hereafter be advanced, by the disclosures made in the course of the trial.

The plaintiff alleges that she is the owner of a house and lot, situated in the city of New Orleans, rented for $100 per month, which she purchased at a suc·cession sale, in 1832.

That on the 2d March, 1833, she was persuaded by one *Louis Ferrand*, in whom she placed implicit confidence, to give him a power of attorney, authorizing him to purchase real estate in her name, and to administer, hypothecate and sell her property, moveable and immovable.

That *Louis Ferrand*, acting under that power, sold the property claimed to the defendant, for the pretended consideration of $9,000, without her knowledge or consent, and that she was kept in utter ignorance of that sale by the collusion and combination of her attorney in fact with the defendant.

That she has never received any part of the consideration, and that, in fact, no consideration was given, but that the sale was simulated, null and void.

That the defendant was so conscious of these facts that, although the sale was passed on the 6th October, 1835, he never pretended to have any claim or title to the property conveyed, till the beginning of May, 1843.

That the petitioner believed herself in possession during all the intervening time, and receiving, as she supposed, the rents, through her agent, *Louis Ferrand*, whom she never called to account.

She prays that the sale passed by *Ferrand* to the defendant be adjudged to be simulated and the property restored to her, together with back rents and damages.

The defendant filed a general denial, and subsequently averred:

1. That the plaintiff never possessed the means of paying for the property described in her petition.

BERNARD
v.
AUGUSTE.

2. That, at the time of the purchase, she was living in open concubinage with *Louis Ferrand*, who was the real owner, and procured the means of paying the price by loans or otherwise.

3. That *Louis Ferrand* had children by his said concubine, and was at the time legitimately married to another woman, who was then living.

4. That *Louis Ferrand* was known to the defendant, and to the public generally, as the real owner; that he acted as such; that the property was assessed in his name, and that he collected the rents up to the time of the sale; that he often advertised it, sold one-third of it to *Charles Hatrel*, and after various unsuccessful attempts to dispose of the remainder at auction, finally sold it to the defendant for a valuable consideration, paid and delivered in the presence of the notary.

5. That the present contest originates in the immoral relations which existed between the plaintiff and *Louis Ferrand*, wherefore the present action cannot be maintained.

6. That it arises from the fact of the plaintiff having lent *Ferrand* her name, while she lived in adulterous concubinage with him, for the purpose of concealing from his creditors the property she now claims; all of which is alike illegal, immoral and contrary to public policy.

The parties went to trial upon the foregoing allegations, and the court of the first instance having adjudged the property to the plaintiff, the defendant appealed.

Simulation is proved on both sides; and this is one of the rare instances in which the evidence of each party, leaves the other without either title or just possession.

*Louis Ferrand* married in 1818, failed in 1823, took the plaintiff as his concubine, and soon after found means to purchase in her name the property in controversy, and much more besides. The proof of the destitution of the plaintiff at the time, and of her inability to pay the price, leaves no doubt on the minds of the court that she was the willing instrument of *Ferrand's* villainy, and that she could not, and did not consider herself as the owner of the property purchased.

The title of the defendant is of precisely the same character. He does not know whether the act under which he claims is a contract of sale or a contract of suretyship. After attempting to show by a great number of witnesses that it was a sale, and making the fact more improbable at every step of his progress, he has resorted to many indirections and devices to show that *Ferrand* was in his debt, and that this deed was passed for the purpose of securing a part of the amount of that indebtedness. The fact is not so. At the date of the sale *Ferrand* owed him nothing, and was of great assistance to him in many ways. The property continued to be assessed in *Ferrand's* name, and *Félicité Bernard* positively swears that, in a conversation between *Ferrand* and the defendant, both admitted that nothing had been paid by the defendant at the time of the sale. An attempt has been made to discredit this witness, but it is shown that she was one of the confederates, who, with the plaintiff and the defendant, aided and assisted *Ferrand* in his frauds. If they all trusted her, there is no reason why we should not; and we are satisfied that in the sale to the defendant, the friend did nothing more than take the place of the concubine, whom *Ferrand* suspected of infidelity, and could trust no longer.

Besides the fact of the previous failure of *Ferrand*, the record contains evidence showing the object and use of these simulations.   He had been appointed syndic of the creditors of one *John Fleming*, some time in 1834, and had filed in court, in 1840, a tableau of distribution, showing a large sum in his hands.   On his failure to pay over the dividends to the creditors, a rule was taken upon him to show cause why he should not bring into court the proceeds of the estate of the insolvent.   His answer to the rule was as follows:

" That he had no money deposited in bank to the credit of the estate for which he was syndic, but that he had employed the funds in his own affairs, prior to the passage of the act which renders syndics liable to a criminal prosecution in such cases, with the intention of making those funds productive, and in the expectation of being able to produce and distribute them among the creditors of *John Fleming*, whenever required to do so; but that owing to the sudden and continued pecuniary distresses and commercial embarrassments which had afflicted the State, and still continued to afflict it, he had been utterly ruined, and had lost not only all his property, but also the funds belonging to the creditors of *Fleming*."

When subsequently, on the trial of this cause, he was called upon to testify— a fit witness in such an issue—he stated on his *voir dire*, that whatever the decision might be, he could but gain, and refused to be sworn in chief on the ground of scruples of conscience.

The relations in which the plaintiff and defendant stood to *Louis Ferrand*, and to each other, would be sufficient to induce the belief that they knew and approved all his acts, and joined on all occasions to assist him in giving color to them.   These facts, however, do not rest upon mere probabilities, for it is in evidence that, on one occasion, a promissory note of the plaintiff, paid by herself and delivered to her by the holder, was subsequently placed in the hands of the defendant, and by him given in payment to *Ferrand*, in presence of the notary, as the consideration of a sale of slaves from *Ferrand* to him.

These persons have no right to soil judicial records with their turpitudes, and the Parish Court erred in suffering them to do so.   *Simulation gives no title,* and contracts prohibited by law, or contrary to good morals or public order, can have no effect.   *Hiriart* v. *Roger* et al. 13 La. 126.   *Gravier's Curator* v. *Carraby's Administrator*, 17 La. 118.

Between the parties implicated in these frauds and simulations, no issue can be formed in relation to them which a court of justice ought to try; nor should any act of theirs affecting the property claimed, to the prejudice of the creditors of *Louis Ferrand*, be noticed.   We leave that property where the dishonest acts of the parties have placed it.   Whoever claims it hereafter, must come before us with clean hands.

It is ordered, that the judgment of the Parish Court be reversed, and the plaintiff's petition dismissed, with costs in both courts.

*F. B. Conrad* and *Benjamin*, for the plaintiff.   *Preaux, L. Janin* and *D. Seghers*, for the appellant.

BERNARD
*v.*
AUGUSTE.