487 So.2d 675 (1986)
In re J.E.C. and P.A.C. Applying For Adoption of D.L.R.
No. 85-CA-678.
Court of Appeal of Louisiana, Fifth Circuit.
April 14, 1986.
Rehearing Denied May 16, 1986.
Writ Denied July 1, 1986.
*676 W. Donald Cashio, New Orleans, for plaintiff-appellee.
Terrance J. Powers, Chalmette, for defendant-appellant.
Before KLIEBERT, GAUDIN and DUFRESNE, JJ.
KLIEBERT, Judge.
This is a devolutive appeal by the natural mother, appellant, from an interlocutory decree of the Juvenile Court granting temporary custody of the adoptive child, D.L.R., to the adoptive parents, J.E.C. and P.A.C. For the reasons which follow, the decree of the Juvenile Court is affirmed.
On November 11, 1984 the natural mother gave birth to a female child out of wedlock. The natural mother was 37 years of age, had been married, divorced in 1977, and had custody of her two other children, both girls, one 17 years of age and the other 13 years of age.
*677 At the time the adoptive child was born, its mother, appellant here, resided with her own adopted mother. The home had three bedrooms, one used by the grandmother, one used by the mother and the third was shared by the 13 and 17 year old daughters.
Prior to the birth of the child, appellant had discussed the possibility of giving the child up for adoption with a co-employee, who was also her mother's friend. On March 2, 1985, appellant contacted her coemployee and asked if the prospective adoptive parents, who had been suggested by the co-employee, were still interested in adopting the child. She informed her coemployee another party had offered her $5,000.00 if she allowed the child to be adopted by them. She then asked the coemployee if the parties she knew who wanted to adopt the child could and would match the offer of $5,000.00. According to the co-employee she then contacted the adoptive parents through several interposed persons. Subsequently, the daughter of the natural mother's co-employee accompanied the natural mother to the office of the lawyer who was to handle the adoption. The co-employee's daughter testified that while on the way to the office the natural mother stated her belief she was doing the right thing by placing the child up for adoption because she wanted the child to have an education and a father. She also informed her of a need for $250.00 immediately.
When the natural mother and the daughter of her co-employee arrived at the attorney's office the natural mother was introduced to an associate of the lawyer who was to handle the adoption. He practiced law in the same office as the lawyer handling the adoption. According to him, he had consented to representing the natural mother when he was asked by the wife of his associate if he would be willing to do so. In that capacity, he explained to the natural mother the papers which she was asked to sign and the legal effects of her consenting to the adoption. According to his testimony, based on his conversations with the natural mother, he believed she understood the documents she signed and was aware of her right to revoke.
On March 2, 1985, the natural mother executed an Act of Surrender before a notary and two witnesses. The attorney for the adoptive parents signed the Act of Surrender as the agent and attorney in fact for the anonymous adoptive parents. The attorney for the natural mother signed the act for himself. The act was executed on a form prepared by and available to anyone from the Clerk of the Juvenile Court for the Parish of Jefferson. The adoptive parents then took physical custody of the child through their attorney. A brother-in-law of the adoptive parents delivered $250.00 in cash to the natural mother after execution of the act. The following Monday, the adoptive parents delivered the remaining $4,750.00 payment to the natural mother through an interposed person.
On March 8, 1985 the natural mother consulted a long-time friend and attorney concerning the surrender of her child for adoption. Pursuant to LSA-R.S. 9:422.10 the attorney for the natural parent drafted and she signed a Revocation of Consent on March 8, 1985. A copy of the revocation was delivered to the adoptive parents' attorney. The natural mother's attorney then contacted the adoptive parents' attorney and informed him the natural mother was in the process of raising $5,000.00 to repay the adoptive parents. The record does not indicate whether this money was raised and there is no indication of it being tendered to the adoptive parents. The adoptive parents did not surrender physical custody of the child and proceeded with the filing of a petition for an interlocutory decree.
Testimony adduced at the hearing shows the adoptive parents had been married 8 years. The husband was employed at the Shell Refinery in Norco, Louisiana for 12 years as an engineer and earned approximately $52,500.00 per year.
The adoptive mother had a college education and had studied to become a member of the Sisters of Mount Carmel. She was, *678 at the time of the trial, 38 years of age and was employed by the Jefferson Parish School System as a teacher/librarian.
The adoptive parents had no other children and lived in a three bedroom home with two baths and a swimming pool. Both adoptive parents testified they were financially capable of raising the child and had become emotionally attached to the child.
After trial the trial court entered an interlocutory decree which maintained the custody of the child in the adoptive parents. The trial judge filed extensive written reasons for judgment. In those he found the natural mother had knowingly signed the act of surrender and at the hearing failed to carry her burden of proving the adoptive parents were unfit or that the proposed adoption would not be in the best interest of the child.
On this appeal the natural mother contends the act of surrender was void and of no force and effect because (1) The act is ambiguous in that it misstated the law relative to the natural mother's right to revoke it and, thus, led her to believe she could revoke all consequences of the act if she revoked it and served notice thereof on the attorney for the adoptive parents within 30 days. Therefore, she argues the ambiguity coupled with inadequate legal counsel caused her to misunderstand the legal consequences of the act of surrender; (2) The act of surrender failed to comply with the requisite of LSA-R.S. 9:422.6; (3) The parties contravened a criminal statute, LSA-R.S. 14:286 and, hence, the act of surrender was not judicially enforceable. Alternatively, even if the act of surrender was valid, the natural mother argues the award of custody of the child to the adoptive parents rather than to the natural parent was not to the best interest of the child and contrary to the requirements of the adoption statutes.
We will consider first the appellant's argument enumerated as No. (1) in the preceding paragraph.
The execution of the act of surrender effected: (a) a transfer of custody from the natural parent to the adoptive parents; (b) the natural mother's consent to the adoption; and (3) a termination of the parental rights of the natural mother.
Under LSA-R.S. 9:422.10, the surrendering parent may revoke the consent to the adoption within thirty days of execution of the act of surrender by executing an act of revocation and serving same in the manner prescribed in the statute. Such an act of revocation, however, has no effect on the transfer of custody or the termination of the parental rights resulting from the execution of the act of surrender. Nor does such a revocation bar the issuance of an interlocutory degree of adoption if the issuance of same is to the best interest of the child. See LSA-R.S. 9:422.11.
Counsel for the natural mother concedes that under the statutes the effect of the act of revocation was limited to a revocation of her prior consent to the adoption of the child. From this premise he argues, however, that the ambiguities contained in the act of surrender renders it invalid for lack of consent because the language quoted below led the natural mother to believe she could execute an act of revocation and thereby revoke the transfer of custody and the termination of parental rights along with her consent to the adoption. He cites In Re G.O., 433 So.2d 1115 (3rd Cir.1983) in support of his contentions.
The language of the act of surrender upon which counsel's argument is predicated reads:
"Appearer [natural mother] further declares that she is represented at the execution of this Act by Attorney [attorney for the natural mother], and that she has been informed of and understands that her rights as the mother of said child are to be completely terminated, including all rights of inheritance from the child. She acknowledges that she has been informed of and understands that this Act of Surrender is completely irrevocable if no written opposition is served on [name of attorney], Attorney at Law [address *679 of attorney], (Attorney in Fact and Agent for Adopting Parents), as representative of the adoptive parents, or the prospective adoptive parents by certified or registered mail within thirty (30) days after the execution of the Act of Surrender."
It is true, as pointed out by counsel for the natural mother, that the organ for the Third Circuit, in In Re G.O., supra, said that the trial court was not unreasonable when it said similar language contained in an act of surrender would lead one to believe "the execution of the act of revocation would revoke all effects of the act of surrender." However, after reciting the trial judge's views, the organ of the Third Circuit said: "However, we choose to rely on other grounds in concluding that the act of surrender is invalid." The other grounds upon which the act of surrender was found to be invalid was its failure to recite that the natural parent "consented to the adoption of the child." The act of surrender which we are confronted with does not contain such a defect; therefore, the holding in this Third Circuit case is not relevant to the issues involved here. Moreover, as we understand the language above quoted, the interpretation placed on it by the trial judge in the Third Circuit case was not reasonable. Clearly, the act of surrender and its three effects are as stated by the language "completely irrevocable if no written opposition..... [is executed or served.]" Since execution of the act of surrender has already accomplished the transfer of custody and termination of the parental rights, the use of the word "opposition" can only have reference to something which has not as yet been accomplished. The only thing which had not as yet been accomplished was the adoption. Consequently, "opposition" could only have reference to the natural parent's consent to the adoption. Therefore, in our view, although the language used could have been clearer, it was not a misstatement of the law.
In his reasons for judgment, the trial judge reached the following conclusion on the facts:
"It is difficult to understand after listening to the testimony how [the natural mother] can contend that she did not understand the consequences of her act. The testimony is clear that on the way to [her attorney's office] [she and the daughter of her co-employee] discussed this matter in detail. As stated earlier [the natural mother] informed [her coemployee's daughter] that she believed adoption was in the best interest of her child as she wanted her child to have an education and a father. [The co-employee's daughter] questioned [the natural mother] at length as to "if she was sure". She told [the natural mother] several times that it would be devastating to turn the child over to the adoptive parents, let a bond form between them, and then ask for the child back. [The natural mother] assured her each time this was brought up that she knew she was making the right decision, and that it was best for the child. Further, upon arriving at the lawyer's office the terms of the Act of Surrender were discussed in detail with [the natural mother], both privately with [her attorney] for approximately one-half hour and in front of [the parties] who witnessed [the natural mother] execute the act. [The witnesses] testified [the natural mother] was calm, collected, and again told [one of the witnesses] that she knew she was doing the best thing for the child."
Based on these observations, the juvenile judge found the language in the act of surrender was clear and in compliance with the act. We agree. Further, we believe counsel for the natural mother's arguments are without merit for the following reasons.
A party is presumed to have knowledge of the documents he signs. One who signs a document without reading it cannot complain that he misunderstood its terms. BNO Leasing Corp. v. Hollins & Hollins, Inc., 448 So.2d 1329 (5th Cir. 1984); Tweedel v. Brasseaux, 433 So.2d 133 (La.1983); Ray v. McLain, 106 La. 780, 31 *680 So. 315 (1901). Considering the testimony of the natural mother and the attorney who represented her at the execution of the act, we cannot say the natural mother was deceived or defrauded so as to operate as a vice to her consent, nor can we say she did not sign the act of surrender freely and voluntarily after being advised of her rights and the consequences of her actions. Also, we note, as did the Juvenile Court, that by its nature the act of giving up one's natural child is oftentimes a very emotional event. However, these signs of emotion are not necessarily sufficient to find duress, deception or lack of voluntariness sufficient to be a vice of consent. See In Re Adoption of Giambrone, 262 So.2d 566 (4th Cir.1972).
The natural mother's contention the act of surrender did not comply with the requirements of LSA-R.S. 9:422.6 is grounded in the fact the act erroneously stated the date of birth of the child was November 11, 1985 rather than November 11, 1984. From this, counsel for the natural mother contends the act of surrender is invalid because it failed to recite that the act of surrender was signed not earlier than the fifth day following the date of birth as required by LSA-R.S. 9:422.6.
In our view, the argument is without merit. The testimony of the parties and the birth certificate of the child clearly show the child was born on November 11, 1984. The Juvenile Court concluded the showing of the birth date of November 11, 1985 was obviously a typographical error because the instrument was dated and executed March 2, 1985, which literally considered, would place the execution of the act of surrender prior to the child's conception. It is well established under our law that parol evidence may be used to alter a written document to correct an obvious or typographical error. Mott v. Phillips, 372 So.2d 223 (3rd Cir.1979); Laspopoulos v. Chaisson, 413 So.2d 248 (4th Cir.1982).
Appellant next contends that the act of surrender is null because its object was a violation of law. The basis for this contention is the exchange of $5,000.00 between the adoptive parents and the natural mother. Counsel for the natural mother argues this payment violated LSA-R.S. 14:286 and hence renders the act of surrender unenforceable. This statute reads as follows:
§ 286. Sale of minor children; penalties
A. Except as provided by law, it shall be unlawful for any person to sell or surrender a minor child to another person for money or anything of value, or to receive a minor child for such payment of money or anything of value.
B. Nothing in this Section shall be construed to prohibit any person contemplating adopting a minor child, not yet born, from paying necessary, actual prenatal care and living expenses of the mother of the minor child adopted, nor of paying necessary, actual living and medical expenses of such mother or child for a reasonable period of time, not to exceed thirty days, after the child is born, nor of paying legal fees of the surrendering parent or parents in connection with a voluntary surrender.
C. None of the provisions of this Section shall apply to the fees charged by non profit adoption agencies licensed by the State of Louisiana.
D. A person convicted of violating this Section shall be punished by a fine not to exceed one thousand dollars or imprisonment for not more than six months, or both.
There is simply no evidence the payment was intended to be a payment for the purchase of a child. To the contrary, the evidence shows the adoptive parents investigated and believed $5,000.00 was within the usual cost of prenatal care and in line with charges made by licensed non-profit adoption agencies and, hence, agreed to pay the amount requested by the natural mother to reimburse her for the costs she had incurred.
The trial court concluded the adoptive parents had no control over how the natural mother spent the $5,000.00 and believed *681 the funds were to be spent to pay expenses incurred by the natural parent during the prenatal period. After reviewing the testimony, we cannot say the trial court erred in reaching these interpretations or conclusions. Additionally, if the natural mother used the funds for expenses other than those associated with childbearing, it was she who committed the fraud. It is well established under our law that a party who commits fraud in a transaction cannot seek to rescind that transaction based on the fraud. First National Bank of Ruston v. Mercer, 448 So.2d 1369 (2nd Cir.1984); Bernard v. Auguste, 1 La. Ann. 69 (La.1846).
Having concluded that the act of surrender was valid, we next address appellant's contention the trial court erred in granting an interlocutory decree of adoption to the adoptive parents.
LSA-R.S. 9:422.11 provides:
§ 422.11. Effect of opposition to adoption and revocation
The withdrawal of the consent of either or both of the parents who both executed the formal act of surrender shall not bar a final or interlocutory decree of adoption, if the decree is in the best interests of the child. Should only one parent have executed the act of surrender in accordance with the provisions of this Part, then the withdrawal of consent by that surrendering parent shall not bar a final or interlocutory decree of adoption, if the decree is in the best interests of the child. Should an interlocutory decree have been entered without opposition, the child shall not be removed from the custody of the prospective adoptive parents nor the final decree of adoption denied unless there is an unfavorable recommendation by the department or the prospective adoptive parents are found to be unfit.
The evidence adduced at trial showed the adoptive parents were stable, financially well off, deeply religious people who had demonstrated they would provide love and attention to the child and had begun to develop an emotional bond with the child.
On the other hand, the natural mother, who no doubt loved the child, admitted to having serious financial and personal problems. The record reflects that she was 37 years of age and had an unstable income and employment history. She lived with her mother along with her two teenage daughters. The documentary evidence introduced shows that these two children were experiencing difficulty in school. The natural mother is a single parent with personal and financial difficulties who already has her "hands full" raising two teenage daughters. The trial court concluded that although she had vacillated on her desire to place the child up for adoption, she did freely consent to the adoption on March 2, 1985.
Contrary to the arguments of counsel for the natural mother, notwithstanding the execution of the act of revocation, the opposition to the adoption by the natural parent ".... does not bar a final or interlocutory decree of adoption if the decree is in the best interest of the child." LSA-R.S. 9:422.11. Under these circumstances, in our view the best interest of the child required the issuance of the interlocutory decree. Hence, we cannot say the trial judge erred. Accordingly, the judgment of the Juvenile Court is affirmed.
AFFIRMED.